Mary MEEKINS and William A. Meekins, her husband, Plaintiffs Below, Appellants,

v.

Susan BARNES, M.D., Women's Imaging Center of Delaware, Inc. and Edell Radiology Associates, P.A., Defendants Below, Appellees.

No. 381, 1998.

Supreme Court of Delaware.

Submitted: Sept. 14, 1999.
Decided: Feb. 10, 2000.

Robert Burton Coonin, Berkowitz, Schagrin, Coonin & Cooper, P.A., Wilmington, Delaware, for appellants.

Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Delaware, for appellees.

F. Alton Tybout, Tybout, Redfearn & Pell, Wilmington, Delaware, for Women's Imaging Center of Delaware, Inc.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice, for the majority:

The plaintiffs-appellants, Mary Meekins ("Meekins") and her husband, filed a medical malpractice action in the Superior Court. The defendants named in the amended complaint are Meekins' gynecologist, Dr. Albert Dworkin, M.D.; a radiologist, Dr. Susan Barnes, M.D.; Women's Imaging Center of Delaware ("WIC"), and Edell Radiology Associates ("Edell"). For the purposes of this appeal, WIC and Edell are considered to be Dr. Barnes' employers. These three defendants will be referred to in this opinion collectively as the "radiologists."

This is an appeal by Meekins from the Superior Court's final judgment in favor of the radiologists. All of the defendants filed motions for summary judgment. The Superior Court granted the radiologists' motions for summary judgment on the basis that Meekins' complaint was barred by the applicable statute of limitations.[1] It deferred a decision on Dr. Dworkin's motion. On the motion of the radiologists, the Superior Court certified its orders in favor of the radiologists as a final judgment that is appealable to this Court pursuant to Superior Court Civil Rule 54(b).

In this appeal, we have examined Meekins' amended complaint from two separate perspectives. First, we have assumed it alleges a cause of action for a single act of medical negligence by the radiologists. Second, we have assumed that Meekins' complaint states with particularity a claim alleging a continuous course of negligent medical treatment against the radiologists. We have concluded that the Superior Court properly determined Meekins' complaint against the radiologists is time-barred under either theory. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

Between 1990 and December 22, 1994, Meekins had several mammograms performed at WIC. After each mammogram, Dr. Barnes interpreted the films and discussed her interpretation with Meekins. Each year, Dr. Barnes informed Meekins to return one year later. Shortly after each annual mammogram, Dr. Barnes sent a report of her interpretation to Dr. Dworkin.

1. 18 *Del.C.* § 6856 (1999).

The events that are the subject of this litigation relate to Meekins' mammogram on December 21, 1994. Following the mammography on that date, Dr. Barnes interpreted the film, discussed that interpretation with Meekins, and advised Meekins to come back for another mammogram in one year. Dr. Barnes also prepared a report dated December 22, 1994, recommending "continued annual examination" and sent it to Dr. Dworkin. None of the radiology defendants had any contact with Meekins after December 21, 1994.

In October of 1995, Meekins noted what felt like a lump. She was examined by her family physician, Dr. Theresa Little, on November 29, 1995. Dr. Little referred her to Dr. Abdel–Misih. On December 1, 1995, he confirmed the existence of two masses in Meekins' left breast. Dr. Abdel–Misih's suspicions were confirmed by oncologist, Dr. Siamak Sami on December 12, 1995. On December 26, 1995, Dr. Abdel–Misih performed a modified radical mastectomy on Meekins' left breast.

### The Parties' Contentions

On April 16, 1997, Meekins and her husband filed a complaint in the Superior Court alleging medical malpractice by the radiologists. The radiologists moved for summary judgment on the basis that Meekins' action was time barred. The radiologists argue that the two-year limitation period began to run on December 21, 1994, the date of Meekins' last visit with Dr. Barnes prior to her visit with the independent health care professionals in December 1995. Since Meekins did not file her complaint until April 16, 1997, the radiologists submit that Meekins' action is barred by the two-year statute of limitations set forth in 18 Del.C. § 6856.

Meekins contends that her complaint was timely filed because the statutory period of limitations did not begin to run until six months after her December 1994 visit with Dr. Barnes. That June 1995 date corresponds with the time when Meekins' expert witness opines that Dr. Barnes should have recalled and seen Meekins for another mammography after the December 1994 visit. In other words, Meekins argues that the two-year statute of limitations did not begin to run until the time for the alleged proper six-month follow-up mammogram arrived in June 1995 and the radiologists failed to call Meekins in for that examination.

Meekins' argument is based on the affidavit of Dr. Sherman Bannett, a radiologist practicing in Cherry Hill, New Jersey. According to Dr. Bannett, the standard of care of radiologists practicing in New Castle County, Delaware, "... required that Mary I. Meekins be recalled for further mammography, within six months, not later than June, 1995." Dr. Bannett's affidavit also states that the radiologists should have informed the referring physician, Dr. Dworkin, of the need for such repeat mammography and should have taken affirmative action to emphasize the need for such repeat films when Meekins failed to return in six months.

The radiologists agree that in December 1994 Meekins was not advised to return in six months, and that they did not contact Meekins in June 1995. The radiologists assert that they do not believe that such actions were appropriate. Nevertheless, the radiologists agree it may be assumed for purposes of this appeal that negligence occurred in the assessment of the films and Meekins' medical history by Barnes in December 1994.

### Legislative History

■ This Court reviewed the legislative history of the current medical malpractice Statute in *Ewing v. Beck*[2] and *Dunn v. St. Francis Hospital, Inc.*[3] The legislation was enacted due to the concern over the law at

2. *Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987).

3. *Dunn v. St. Francis Hospital, Inc.,* Del. Supr., 401 A.2d 77, 79 (1979).

that time and the rising costs of malpractice liability insurance.[4] The preamble of the legislation specifically provided:

WHEREAS, the General Assembly determined it is *necessary to make certain modifications to its current legal system as it relates to health care malpractice claims* if the citizens of Delaware are to continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort of breach of conduct on the part of a health care provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability . . . [5]

The report to the Governor by the Delaware Medical Malpractice Commission, which drafted the statute stated: "The overall effect will be to eliminate the uncertainty created by the present open-ended period of limitations . . ." [6]

During the debates that preceded the enactment of the present statutory scheme, advocates for potential plaintiffs in medical malpractice cases had urged that various exceptions should be included in the applicable statute of limitations.[7] One argument on behalf of prospective plaintiffs relied on this Court's prior decision in *Layton v. Allen*,[8] which held that the then extant statute of limitations must be extended for injuries that are "inherently unknowable." [9] The legislative history reflects that the philosophical equities

of the holding in *Layton* were considered by the General Assembly prior to the enactment of 18 *Del.C.* § 6856.[10]

The General Assembly carefully considered the arguments against having a statute of limitations begin to run when the patient is unaware of the injury caused by an allegedly negligent medical error. The General Assembly's response is codified in the Delaware Medical Malpractice Act.[11] The applicable statute of limitations in actions alleging medical malpractice is set forth in 18 *Del.C.* § 6856 which provides, in part, that:

No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred; provided, however, that:

(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter;

. . . .

Thus, the General Assembly decided upon a definite, albeit hybrid statute of limitations.[12] There is now one period (two years) applicable to injuries discovered within two years of the wrongful act and a different period (three years) for

4. *Id.*

5. 60 *Del.Laws*, c. 373 (1976). (emphasis added).

6. Report of the Delaware Medical Malpractice Commission, pp. 3–4, February 26, 1976.

7. *Ewing v. Beck*, 520 A.2d at 658.

8. *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968).

9. *Ewing v. Beck*, 520 A.2d at 658 (*quoting Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968)).

10. *Id.*

11. 60 *Del.Laws*, c. 373 (1976) (codified in 18 *Del.C.*, c. 68 (1999)).

12. *Id.*

"inherently unknowable" injuries.[13] Accordingly, this Court has held the unambiguous language in the present statute of limitations for medical malpractice claims reflects a decision by the General Assembly to both codify the "inherently unknowable" injury rule of the *Layton* case, and to limit it to three years.[14]

### Single Act of Medical Negligence

The first time this Court examined the new medical malpractice statute of limitations was in the context of a claim for a single act of medical negligence. In *Dunn v. St. Francis Hospital*,[15] this Court held that "there is *no doubt* that the phrase 'injury occurred' refers to the date when the wrongful act or omission occurred."[16] In *Dunn*, this Court discussed the plaintiff's attempt "to avoid the clear thrust of the statute by skillful resort to the *general* theory of a negligence action in relation to the statutory phrase 'date upon which such injury occurred.'"[17]

In *Dunn*, the plaintiff argued that to establish a cause of action for negligence three elements must be shown: negligence, proximate cause, and damage.[18] The plaintiff in *Dunn* relied upon Prosser's *Law of Torts* for the proposition that "the statute of limitation does not run in a negligence action until some *damage* has occurred."[19] The plaintiff then argued there was no damage until pain was experienced and therefore that was the date injury occurred.[20]

In *Dunn*, this Court rejected the plaintiff's reliance upon the elements needed to proceed under a general theory of negligence in a Delaware action for single act of medical negligence. In doing so, we stated: "[t]he answer, however, must be that the [Delaware Medical Malpractice] statute was a response to a particular issue in a particular context [medical negligence] and that to construe it broadly without bounds, as plaintiff desires, would emasculate its very purpose."[21] This Court then examined and rejected the plaintiffs argument that 18 *Del.C.* § 6856 is unconstitutional if the phrase "injury occurred" refers to the date on which the wrongful act or omission occurred.

In this case, Meekins' argument is similar to the plaintiff's argument in *Dunn*. Paragraph 46 of the amended complaint alleges that in December 1994, the radiologists were medically negligent by failing to diagnose Meekins' cancer. Meekins' argues that the statute of limitations did not begin to run until she was damaged or "injured" when the radiologists failed to call her back for another mammogram six months later in June of 1995.

Meekins had a cause of action for medical negligence, however, as early as December 21 or December 22, 1994. That is when Dr. Barnes examined the mammogram and reported to Dr. Dworkin, allegedly negligently and inaccurately, that there were no signs of cancer, no change from prior mammograms and recommended continued annual examination. In theory, Meekins could have brought an action at that time had Meekins known of the allegedly negligent diagnosis, although her damages would be difficult to quantify.

The fact that Meekins did not know of the potential claim for misdiagnosis until her next annual examination in December,

---

13. *Id.; see also Dunn v. St. Francis Hospital, Inc.*, Del.Supr ., 401 A.2d 77, 81 (1979).

14. *Ewing v. Beck*, 520 A.2d at 659. *Accord Dunn v. St. Francis Hospital, Inc.*, 401 A.2d at 79.

15. Del.Supr., 401 A.2d 77 (1979).

16. *Id.* at 80 (emphasis added).

17. *Id.*

18. *Id.*

19. *Id.* (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30, at 144 (4th ed.1971)).

20. *Id.*

21. *Id.*

1995 did not toll the beginning of the two-year statute of limitations. Lack of knowledge under the applicable statute extends the period to three years *solely* if that lack of knowledge extended for the entire two year period (*i.e.*, until December 21, 1996). The language of 18 *Del.C.* § 6856 is clear—"No action ... against a health care provider ... arising out of malpractice shall be brought after the expiration of two years from the date [of injury] ... provided, however, that: (1) *Solely* in the event [the] ... injury ... during such period of 2 years was unknown ... such action may be brought ... [within] 3 years from the date [of] injury." (emphasis added).

In *Dunn*, this Court held that the phrase "injury occurred" in the Delaware Medical Malpractice statute refers to the date of the medically negligent act.[22] An act of omission can be a valid basis for a plaintiff's medical malpractice claim, if that act of omission occurs "within the context of an affirmative happening or event."[23] The only affirmative happening or event of the radiologists occurred at the time of the misdiagnosis in December 1994.

It is artificial to predicate the commencement of the statute of limitations period, as Meekins' argues, on the theoretical six-month period (*i.e.*, June 1995) from the December 1994. Meekins selected that date on the basis of an affidavit by another physician that in December 1994, Dr. Barnes should have ordered another examination in six months. There was no cause of action that actually arose in June 1995 because no affirmative happening or event of medical negligence occurred at that time.

It may seem harsh that a statute of limitations begins to run on a misdiagnosis from the date of that misdiagnosis when the patient is unaware of the allegedly negligent error causing the injury. But by providing for an additional year to bring suit, the General Assembly designed the Delaware Medical Malpractice statute to ameliorate that harshness, if the patient did not have knowledge of the claim until after the expiration of the two-year period. That is not this case.

Both sides to this controversy agree that the two-year statute of limitations is applicable. Meekins still had one full year to bring suit for a single act of medical negligence against the radiologists, after learning of her injury in December of 1995. Unfortunately, she failed to do so.

### Continuous Negligent Medical Treatment

We next examine Meekins' amended complaint from an alternative perspective. The Superior Court noted that Meekins does "not dispute the application of the two-year statute. Rather [Meekins] relies on the continuum of medical care doctrine which can be relied upon in Delaware." The Superior Court then observed "there are a couple of fatal difficulties with [Meekins'] position. In the first place, the theory of continuum of medical care has not been pleaded and 'it must be alleged in a Complaint with particularity.'"[24] Nevertheless, the Superior Court examined the continuous negligent medical theory of recovery and held that Meekins' "view is wrong." We agree.

In *Ewing v. Beck*, this Court held that Delaware recognizes the doctrine of continuous negligent medical treatment and then applied the Delaware medical malpractice statute of limitations to that specific cause of action. A complainant invoking the continuous negligent medical

---

**22.** *Dunn v. St. Francis Hospital, Inc.*, Del. Supr., 401 A.2d 77 (1979).

**23.** *Ogden v. Gallagher*, Del.Supr., 591 A.2d 215, 220 (1991) (citing *Benge v. Davis*, 553 A.2d at 1184, 1185 n. 6).

**24.** *Ewing v. Beck*, 520 A.2d at 664.

treatment doctrine has the burden of alleging with particularity a course of continuing negligent medical treatment during a finite period.[25] The determinative question in a claim based upon continuous negligent medical treatment is the time when the statutory period of limitations begins to run. In *Ewing*, we held that:

> the "date upon which such injury occurred" is the last act in the negligent medical continuum. Therefore, if a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum, the *statute of limitations begins to run for two years from the last act in the negligent continuum prior to the point in time when the plaintiff has actual knowledge of the negligent course of treatment* or in the exercise of reasonable diligence could have discovered the negligent course of treatment.[26]

■ The *Ewing* holding requires a two-part inquiry: first, what is the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment; and second, what is the date of the "last act" in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment. The answer to part one of the *Ewing* inquiry is determined by an objective test, i.e., the reasonably prudent person standard.[27] The answer to part two of the *Ewing* inquiry is also ascertained by an objective analysis, i.e., what constitutes the "last act" in the negligent continuum?

■ The material facts in this case are not in dispute. This Court must determine whether the Superior Court properly applied the two-part inquiry provided for in *Ewing*. With respect to part one, the date Meekins had knowledge of the negligent course of treatment, the record is undisputed that in December 1995, Meekins had actual knowledge of the radiologists' prior negligent treatment. This is the month when Meekins was treated by the independent health care professionals, learned of her breast tumor, and had a mastectomy.

With respect to part two of the *Ewing* inquiry, the word "act" has been defined as "[t]o perform; to fulfill a function; to put forth energy; to move, as opposed to remaining at rest; . . . a thing done or established."[28] This definition and the general understanding of the word make it clear that an "act" is a form of affirmative conduct. The "last act," which triggers the statutory period of limitations, in a claim based upon continuous negligent medical treatment, must be an *affirmative* happening or event. In the context of health care treatment, the term "act" can take a variety of forms, for example: surgery[29]; a prescription for medication[30]; an emergency room visit[31]; and an office visit or consultation.[32]

Meekins argues the last act of negligence on the part of the radiologists was the failure to call Meekins in for a repeat

**25.** *Ewing v. Beck,* 520 A.2d at 662.

**26.** *Id.* at 663 (emphasis added).

**27.** In addition, in determining the date of knowledge, a presumption operates that "a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct, on [the] date of the consultation with the independent health care provider." *Id.* at 664.

**28.** *Ballentine's Law Dictionary* 17 (3d ed.1969).

**29.** *Cf. Dunn v. St. Francis Hosp., Inc.,* Del. Supr., 401 A.2d 77 (1979)

**30.** *Cf. Oakes v. Gilday,* Del.Super., 351 A.2d 85 (1976).

**31.** *Cf. Reyes v. Kent General Hosp., Inc.,* Del. Supr., 487 A.2d 1142 (1984).

**32.** *Ewing v. Beck,* Del.Supr., 520 A.2d 653 (1987).

mammogram in June 1995. A similar argument was advanced unsuccessfully by another plaintiff in *Benge v. Davis,* Del. Supr., 553 A.2d 1180 (1989). In *Benge,* this Court held that each day a patient relies upon the defendant healthcare provider's negligent diagnosis is not an "act" which delays the beginning of the running of the period of limitations.[33]

In *Benge,* we held that an act of omission can be a valid basis for a plaintiff's medical malpractice claim, if that act of omission occurs "within the context of an affirmative happening or event."[34] The last affirmative happening or event which Meekins had with the radiologists was her visit with Dr. Barnes on December 21, 1994 or Dr. Barnes' report to Dr. Dworkin on December 22, 1994. If it was negligence for the radiologists not to advise Meekins to return in six months for another mammogram, that negligence occurred in December 1994 when Dr. Barnes advised Meekins to return one year later.

Meekins had a cause of action as early as December 21 or December 22, 1994. That is when Dr. Barnes examined the mammogram and reported to Dr. Dworkin, allegedly negligently and inaccurately, that there were no signs of cancer, no change from prior mammograms and recommended continued annual examinations in spite of Meekins' medical history. Under the Delaware medical malpractice statute, the fact that Meekins did not know of the potential claim for negligent diagnosis and recommendation until December 1995 did not toll the beginning of the two-year statute of limitations.

For the purpose of this appeal, it does not matter whether the December 21, 1994 office visit or the December 22, 1994 report was the last act of Dr. Barnes in the alleged negligent continuum. Dr. Barnes' medical advice was the same: Meekins should return for another mammogram in one year. In December 1995, Meekins had one full year left to file her complaint against the radiologists before the two-year statute of limitations expired.

### Conclusion

Both sides to this controversy agree that the two-year statute of limitations is applicable. The act giving rise to Meekins' claim for medical negligence occurred at the time of the misdiagnosis and report in December 1994. Meekins had actual knowledge of her cause of action in December 1995. Unfortunately, Meekins' complaint was filed on April 16, 1997. Consequently, her cause of action against the radiologists is time-barred by the two-year statute of limitations.[35] The decision of the Superior Court granting the radiologists' motions for summary judgment is affirmed.

BERGER, Justice, dissenting:

Before the current malpractice statute of limitations was enacted in 1976, health care providers faced open-ended liability for "inherently unknowable" injuries.[36] The present statute, 18 *Del.C.* § 6856, eliminates that perceived problem. Now, a "blamelessly ignorant" person has no recourse for negligent health care if the injury does not manifest itself within three years. The time frame is reduced to two years where, as here, the injury is discoverable within two years. The issue before this Court is whether Section 6856 should be construed in such a way as to further restrict the statute of limitations from the stated two years down to one and one half years.

In December 1994, after Mary Meekins' annual mammogram, the radiologist examined Meekins' film and advised her to re-

**33.** *Benge v. Davis,* 553 A.2d at 1185–86.

**34.** *Ogden v. Gallagher,* Del.Supr., 591 A.2d 215, 220 (1991) (citing *Benge v. Davis,* 553 A.2d at 1184, 1185 n. 6).

**35.** 18 *Del.C.* § 6856.

**36.** *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968).

turn in one year for another mammogram. In slightly less than one year, however, Meekins discovered a lump in her breast, which was diagnosed as cancer. Meekins alleges that she should have been called back for another mammogram in six months, not one year. Her expert's supporting affidavit states that the radiologist should have advised Meekins to return in six months and should have followed up with a reminder if Meekins did not return by June 1995 for another mammogram.

Everyone agrees that the two-year limitation in § 6856 is controlling, since Meekins discovered the cancer within two years after the injury occurred. The question is, when did the injury occur? The majority, relying on *Dunn v. St. Francis Hospital*,[37] says "the date upon which such injury occurred" must be construed to mean the date on which the wrongful act or omission occurred. But the statute does not use that language and *Dunn* addressed a very different question. This Court could follow *Dunn*, and carry out the General Assembly's statutory mandate, by simply reading § 6856 as written and applying the limitations period to the facts of this case.

In *Dunn*, the issue was whether the "inherently unknowable" injury rule survived the enactment of § 6856. Plaintiff underwent back surgery in 1970, and did not realize that the surgery was performed improperly until he started having leg pain five years later. The question on appeal was "whether the statute of limitations commenced to run when the negligent act or omission was committed or when the harm first manifested itself to the patient."[38] The Court reviewed the legislative history and concluded that the clear intent of § 6856 was to eliminate the open-ended limitations period for inherently unknowable injuries.

Plaintiff tried to avoid the three-year statute of limitations by arguing that the

"date upon which such injury occurred" means the date on which he became aware of the injury. According to plaintiff, (i) he suffered no damage until he felt pain from the botched surgery; (ii) he had no cause of action for negligence until he had damages; and (iii) the statute of limitations does not begin to run until there is a cause of action. This Court properly rejected plaintiff's argument. First, the Court noted that the "no-pain, no-injury rationale" would frustrate the purpose of § 6856. Under plaintiff's approach, the limitations period for unknowable injuries would be open-ended. Second, the Court disputed plaintiff's premise that there was no damage before the pain in his leg began:

> The statutory context and history makes it unnecessary for us to explore when damage occurred in the context the plaintiff argues, but it seems to us that it is not necessarily the same time as the first manifestation of pain in the leg given the initial and allegedly wrongful entry into the body from the right side of the back.[39]

The *Dunn* decision, read in context, is correct. The Court there was deciding whether the patient's injury occurred at the time of the negligent act (when the surgery was performed) or at the later, and undefinable, time of discovery of the injury (when the leg pain began). In *Dunn*, as in most cases, the injury actually occurred at the same time as the negligent act. Thus, the Court did no violence to the statute when it said that date of injury means date of negligent act.

In this case, however, the date of the negligent act and the date of injury are not the same. The date of the negligent act was December 21, 1994, when the radiologist told Meekins to come back in one year instead of six months. The date of the injury was six months later, June 21, 1995, when Meekins would have begun cancer

---

**37.** Del.Supr, 401 A.2d 77 (1979).

**38.** *Id.* at 78.

**39.** *Id.* at 80.

treatment if she had come back for another mammogram. Since the *Dunn* Court never considered when the statute begins to run in cases where the date of negligent act is not the same as the date of injury, its holding provides little guidance. Rather than use the *Dunn* formulation out of context, I would follow settled principles of statutory construction, and give effect to the plain language of § 6856. The statute provides that the limitations periods runs from the "date upon which such injury occurred." That date is the date on which the negligent act caused harm (whether known or unknown). In this case, it was June 22, 1995.

The majority asserts that Meekins had a cause of action for medical malpractice as early as December 21, 1994, although she did not know of her claim then and her damages would have been difficult to quantify. I understand the majority to mean that Meekins suffered some actionable harm on that date, but I do not understand what that harm was. There is no treatment that even the most prudent doctor would have initiated at that time. If Meekins had discovered the error within six months, she could have gone for a follow up mammogram and would have been in the same position as if there had been no negligence at all. It was only after June 21, 1995, that the radiologist's error caused injury by depriving Meekins of immediate cancer treatment.

In sum, the majority has reduced the statute of limitations for Meekins from two years to eighteen months. She could not have stated a claim for relief before June 22, 1995, because she suffered no harm before then, yet the majority holds that the statute of limitations began to run six months earlier. I understand the need to construe § 6856, consistent with the intent of the legislature, to bar claims brought more than two (or in some cases, three) years after the date of the injury. I do not understand the need to construe "date of injury" to mean "date of negligent act"

in a case like this, where the two dates are not the same. I respectfully dissent.

HARTNETT, Justice, dissenting:

I join Justice Berger in dissent, but for a slightly different reason. I am convinced that the injury occurred in June 1995, because that is the date when the radiologist should have recalled Meekins.