# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MONICA KING ANDERSON, )
Individually and as Personal )
Representative of the ESTATE OF )
WILLIAM KING, STEPHANIE )
KING, HEATHER GUERKE, and )
AMBER WITHROW, )
)
    Plaintiffs, )
)
    v. ) C.A. No. N18C-04-158 ALR
)
GI ASSOCIATES OF DELAWARE, )
P.A., ADVANCE ENDOSCOPY )
CENTER, LLC, and NATWARLAL )
RAMANI, M.D., )
)
    Defendants. )

Submitted: March 13, 2020
Decided: April 28, 2020

***Upon Defendants' Motion for Summary Judgment***
**DENIED**

## <u>MEMORANDUM OPINION</u>

Bradley J. Goewert, Esquire, Lorenza A. Wolhar, Esquire, Marshall, Dennehey Warner, Coleman & Goggin, Wilmington, Delaware, Attorneys for Defendants.

Timothy E. Lengkeek, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Attorney for Plaintiffs.

**Rocanelli, J.**

This is a medical negligence case involving a continuum of negligent medical treatment. William King was at high risk for developing colorectal cancer. Starting in or about 2004, Mr. King was a patient of Defendant Natwarlal Ramani, M.D. who performed repeated colonoscopies. Dr. Ramani's associated medical professional entities, GI Associates of Delaware, P.A. and Advance Endoscopy Center, LLC, are also defendants (collectively, "Defendants").

On April 4, 2011, Dr. Ramani performed a repeat colonoscopy which showed benign tumors in Mr. King's colon. Following the procedure, Dr. Ramani recommended to Mr. King that he return for a colonoscopy within 3 to 5 years. As directed by Dr. Ramani, Mr. King scheduled a repeat colonoscopy with Defendants to take place on March 23, 2016—within 5 years of the April 4, 2011 colonoscopy. Unfortunately, Dr. Ramani could not complete the procedure on March 23, 2016 because a malignant growth had formed in Mr. King's colon.

Mr. King died just a few months later. By letter dated January 26, 2017, Mr. King's family, who are the plaintiffs in this lawsuit together with Mr. King's estate, gave notice to Defendants of an investigation of Defendants' treatment of Mr. King. This lawsuit was filed on April 16, 2018.

Defendants seek summary judgment in their favor on the ground that this lawsuit is time-barred. Specifically, Defendants contend that this case involves a single act of negligence that took place on April 4, 2011, when Dr. Ramani told Mr.

1

King to return for his next colonoscopy within 3 to 5 years. Plaintiffs oppose summary judgment on the grounds that this lawsuit involves a continuum of negligent treatment rather than a single act of negligence and that it was filed within the applicable statute of limitations.

As set forth more fully in this opinion, the Court concludes that the statute of limitations began to run on March 23, 2016, the date of the last act in a continuum of negligent medical treatment; that the statute of limitations was tolled for up to 90 days by the notice of investigation on January 26, 2017; and that this lawsuit filed on April 16, 2018 was timely filed within the tolled statute of limitations period. Accordingly, summary judgment must be denied.

## STANDARD OF REVIEW

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[2] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[3] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the

---

[1] Super. Ct. Civ. R. 56(c).
[2] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).
[3] *Id.*

2

non-moving party."[4]  Summary judgment is appropriate only if Plaintiffs' claims lack evidentiary support such that no reasonable jury could find in Plaintiffs' favor.[5]

## DISCUSSION

The applicable statute of limitations for medical negligence actions is set forth in Section 6856 of Title 18 of the Delaware Code which provides in relevant part:

> No action for the recovery of damages upon a claim against a health-care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred . . . .[6]

Plaintiffs may toll the limitations period up to 90 days "by sending a Notice of Intent to investigate to each potential defendant or defendants by certified mail, return receipt requested, at the defendant's or defendants' regular place of business."[7] Medical negligence actions involving ascertainable injuries are barred after two years from the "date upon which such injury occurred,"[8] subject to a tolling period of up to 90 days.[9]  For purposes of Section 6856, the date upon which the "injury"

---

[4] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[5] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

[6] 18 *Del. C.* § 6856.

[7] *Id.* § 6856(4).

[8] *See id.* § 6856 ("No action . . . against a health-care provider for personal injury . . . arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred . . . .").

[9] *See id.* § 6856(4) ("A plaintiff may toll the above statutes of limitations for a period of time up to 90 days . . . .").

occurred depends on whether the case involves a single act of negligence or a continuous course of negligent medical treatment.

## I. Single Acts of Negligence

With respect to single acts of negligence, the decisional law is well-settled. The Delaware Supreme Court has consistently held that where there is a single act of medical negligence, typically a misdiagnosis or a failure to diagnose, the statute of limitations for medical negligence begins to run on the date that the single act of negligence occurred. Hence, according to the Delaware Supreme Court, where there has been a single act of medical negligence, the date of the "injury" is the date on which the medically "wrongful act or omission occurred."[10]

*Dunn v. St. Francis Hospital*[11] involves a single act of negligence by a surgeon. In *Dunn*, the Delaware Supreme Court held that the phrase "injury occurred" in Section 6856 refers to the date of the wrongful act or omission.[12] *Dunn* involved a negligently performed surgery and a plaintiff who did not experience the resulting pain until five years later.[13] Examining the text of the statute and its legislative history, the Court concluded that the purpose of Section 6856 was to "limit the open-ended aspect of the prior law which provided in the case of an

---

[10] *Dambro v. Meyer*, 974 A.2d 121, 126 (Del. 2009) (quoting *Meekins v. Barnes*, 745 A.2d 893, 897–98 (Del. 2000)).
[11] 401 A.2d 77 (Del. 1979).
[12] *See id.* at 79–81.
[13] *See id.* at 78.

4

'inherently unknowable' injury that the applicable period began to run when the injured person became aware of his injury."[14] Accordingly, the Court found that the date on which the plaintiff's pain manifested had no bearing on when the limitations period began; rather, the source of the pain—the negligent surgery—was the injury.[15] Thus, the limitations period began on the date of the negligent surgery because it was a single act of negligence.

*Dambro v. Meyer* also involved a single negligent act: a misread mammogram.[16] In *Dambro*, the Supreme Court held that the two-year statute of limitations began to run on the date that the defendant-doctor failed to diagnose breast cancer that should have been evident on the mammogram.[17] The Court noted that, for purposes of Section 6856, the injury—"the delay in treatment"—occurred on the "date that the cancer could have been diagnosed but was not."[18] Similarly, in *Meekins v. Barnes*, another case involving a single negligent act of a misread mammogram, the Court held that the injury occurred on the date that the defendant-

---

[14] *Id.* at 79 (citing *Layton v. Allen*, 246 A.2d 794 (Del. 1968)).
[15] *See id.* at 80–81.
[16] 974 A.2d at 124–25.
[17] *See id.* at 131–32.
[18] *Id.* at 132.

5

doctor examined the mammogram and negligently failed to diagnose the plaintiff's cancer.[19]

Citing the decisions of the Delaware Supreme Court which involve a single act of negligence, Defendants argue that Plaintiffs' claims are time-barred because, according to Plaintiffs' own expert witness, Dr. Ramani breached the standard of care on April 4, 2011, when Dr. Ramani instructed Mr. King to return for a repeat colonoscopy within 3 to 5 years. According to Defendants, this advice constitutes a single act of negligence and the decisional law involving single acts of negligence interprets the word "injury" to mean "negligence" in the context of Section 6856. Accordingly, according to Defendants, the statute began to run on April 4, 2011 and expired two years later on April 4, 2013 or, at most, on April 4, 2014.[20]

Defendants' reliance on the decisional law involving single acts of negligence is misplaced for several reasons. First, the case before the Court does not involve a single act of negligence but instead involves a continuous course of negligent medical treatment, which is a separate and distinct cause of action subject to a

---

[19] 745 A.2d at 897–98; *see also Reyes v. Kent Gen. Hosp., Inc.*, 487 A.2d 1142, 1144–45 (Del. 1984) (finding the "injury occurred" on the date that an emergency room physician failed to diagnose a malignant tumor).

[20] Section 6856 provides a separate three-year limitations period for injuries that were "unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person," 18 *Del. C.* § 6856(1), the effect of which is to "both codify the 'inherently unknowable' injury rule of the *Layton* case, and to limit it to three years." *Meekins*, 745 A.2d at 896–97. Plaintiffs do not ask the Court to apply the three-year limitations period.

6

different Section 6856 analysis.[21]  Second, the decisional law involving single acts of negligence is not applicable where, as here, the injury and the negligence did not take place on the same date.  Importantly, each of the cases relied upon by Defendants involved medically negligent acts that immediately gave rise to the plaintiffs' injuries.  Third, Defendants conflate Plaintiffs' expert's *medical* opinion regarding Dr. Ramani's negligence with the *legal* analysis construing the date of injury.

Unlike the injuries in the cases involving single acts of negligence, Mr. King's injury did not arise at the time of the alleged breach of the standard of care.  There is no record evidence that Mr. King had cancer which was missed or misdiagnosed by Dr. Ramani during the April 4, 2011 colonoscopy.  Rather, after his colonoscopy on April 4, 2011, Mr. King remained under Dr. Ramani's negligent treatment and returned, as instructed, within 5 years for a repeat colonoscopy.  While Plaintiffs claim that Dr. Ramani failed to meet the standard of care on April 4, 2011 by advising Mr. King to return for a repeat colonoscopy in 3 to 5 years, under the correct legal analysis involving a continuum of negligent treatment, Mr. King's injury did not occur until Mr. King followed the advice of his physician and had a repeat colonoscopy on March 23, 2016.  On that date, Dr. Ramani could not complete Mr.

---

[21] *See* Second Am. Compl. ¶ 24; *cf. Ewing v. Beck*, 520 A.2d 653, 661 (Del. 1987) ("[W]hat the Delaware courts have recognized is more appropriately described as a *cause of action* for continuous negligent medical treatment." (emphasis added)).

King's routine screening colonoscopy because there was a malignant growth on his colon and the cancer had advanced too far for effective treatment. Accordingly, the decisional law governing single acts of negligence does not apply to this case.

Moreover, this Court finds that the legal question of when the "injury occurred" is not controlled by the professional opinion of Plaintiffs' standard of care expert, who testified at his deposition that Dr. Ramani breached the standard of care on April 4, 2011 by advising Mr. King to return for a repeat colonoscopy in 3 to 5 years "whereas, the standard of care would be three years, at most I would say."[22] According to Plaintiffs' expert, Mr. King "was even more likely to develop cancer than the average person" and therefore "certainly three years would have been the absolute maximum, according to the guidelines."[23]

Justice Berger's dissenting opinion in *Meekins* is instructive here. In *Meekins*, Justice Berger disagreed with the majority conclusion that the date of the negligent act and date of the injury were the same date. Justice Berger emphasized that the plain language of the Delaware statute provides that the limitations period runs from the date of injury.[24] While the date of injury and the date of negligence are frequently the same, Justice Berger explained, the date of malpractice is not the controlling date; rather, the controlling date is the date of the injury: "I would follow settled

---

[22] Moss Dep. 25:9–11, Oct. 14, 2019.
[23] Moss Dep. 25:11–16.
[24] *See Meekins*, 745 A.2d at 901–02 (Berger, J., dissenting).

principles of statutory construction, and give effect to the plain language of § 6856. The statute provides that the limitations periods runs from the 'date upon which such injury occurred.' That date is the date on which the negligent act caused harm."[25]

For Mr. King, who followed his doctor's advice and had a repeat colonoscopy within 5 years as instructed, the injury occurred on March 23, 2016, the day Dr. Ramani could not complete the prescribed colonoscopy because a malignant growth had developed in Mr. King's colon. While Dr. Ramani may have breached the standard of care on April 4, 2011, the injury occurred when Mr. King followed the medical advice he was given. Here, the date of negligence and the date of injury are two separate dates. Accordingly, the decisional law involving single acts of negligence does not apply to Plaintiffs' claims. Instead, application of Section 6856 to Plaintiffs' claims is governed by the continuous negligent medical treatment doctrine.

## II.  Continuous Negligent Medical Treatment

### A.  The two-year statute of limitations began to run on March 23, 2016

Delaware recognizes the doctrine of continuous negligent medical treatment as a separate cause of action that is applicable "[w]hen there is a continuum of negligent medical care related to *a single condition* occasioned by negligence."[26] "If

---

[25] *Id.* at 902.

[26] *Ewing v. Beck*, 520 A.2d 653, 662 (Del. 1987).

any act of medical negligence falls within the period during which suit may be brought, the plaintiff . . . may bring suit for the consequences of the entire course of conduct."[27] Bare allegations of continuous negligent medical treatment are not enough to overcome a defendant's motion for summary judgment based on statute of limitations grounds.[28] Instead, the Court must examine the facts alleged to determine whether "the negligent treatment, as alleged, can be segmented or is, in fact, so inexorably intertwined that there is but one continuing wrong."[29]

Claims of continuous negligent medical treatment are subject to the limitations period set forth in Section 6856, which, for claims of continuous negligent medical treatment, runs from the date of the "last act" in the negligent continuum.[30] The Court applies a two-part inquiry to determine the date of the "last act."[31] First, the Court must determine "the date upon which the plaintiff had actual or constructive knowledge of the negligent course of treatment," applying a

---

[27] *Id.* at 662.

[28] *See Ogden v. Gallagher*, 591 A.2d 215, 219 (Del. 1991) ("[A] complaint brought under the continuous negligent medical treatment theory of recovery must allege with particularity a continuous course of negligent medical treatment over a finite period of time.").

[29] *Ewing*, 520 A.2d at 662.

[30] *Id.* at 663 ("[I]f a plaintiff has a cause of action for continuous negligent medical treatment . . . , the state of limitations begins to run for two years from the last act in the negligent continuum . . . .").

[31] *See Meekins*, 745 A.2d at 899 (discussing the two-part inquiry required by the holding in *Ewing*).

reasonably prudent person standard.[32]  Second, the Court must determine "what is the date of the 'last act' in the negligent continuum immediately prior to the date that the patient received knowledge, actual or constructive, of the negligent course of treatment."[33]  The "last act" in the negligent continuum "must be an *affirmative* happening or event" and is ascertained by an objective analysis.[34]

With respect to the first prong, Mr. King acquired knowledge of Dr. Ramani's alleged negligence sometime after March 23, 2016, the date of the incomplete repeat colonoscopy, when Mr. King was diagnosed with colon cancer.  At that time, Mr. King either had actual knowledge of Dr. Ramani's negligent course of treatment or could have discovered Dr. Ramani's negligent course of treatment in the exercise of reasonable diligence.

With respect to the second prong, Defendants argue that the limitations period "begins on the date of the last *negligent* act in the continuum of negligent medical care."[35]  Defendants correctly note that the Delaware Supreme Court has distinguished the "continuing treatment doctrine," which is not recognized in Delaware, from the "doctrine of continuous negligent medical treatment," which is

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Defs.' Reply Br. Supp. Mot. Summ. J. 11–12 (emphasis added).

recognized as a valid cause of action in Delaware. The Court in *Benge v. Davis* explained the distinction:

> Under the continuing treatment doctrine, the statute of limitations begins to run at the end of a course of treatment for a condition brought about by a prior negligent act, whether or not the continuous treatment is also negligent. On the other hand, under the doctrine of continuous negligent medical treatment, the statute of limitations runs from the last act in a "continuum of negligent medical care related to *a single condition* occasioned by negligence." The difference between the two doctrines, for statute of limitation purposes, is that under the doctrine of continuous negligent medical treatment, the focus is limited to the last act in the negligent continuum, not the last act of any treatment.[36]

Here, Defendants argue that treating a non-negligent act, i.e., the repeat colonoscopy on March 23, 2016, as the "last act" for purposes of the continuous negligent medical treatment doctrine would amount to adopting the continuing treatment doctrine, which the Supreme Court has expressly rejected. Accordingly, Defendants argue, "the last act" must have been "the last *negligent* act."[37]

Defendants' argument misconstrues the purpose of the continuous negligent medical treatment doctrine, which provides a cause of action to plaintiffs "[w]hen there is a *continuum* of negligent medical care."[38] In other words, the doctrine applies to circumstances where a series of acts by a medical professional *taken together* constitute negligence on the part of the medical professional. Each act

---

[36] 553 A.2d 1180, 1183 (Del. 1989) (quoting *Ewing*, 520 A.2d at 662).
[37] Defs.' Reply Br. Supp. Mot. Summ. J. 11–12 (emphasis added).
[38] *Ewing*, 520 A.2d at 662 (emphasis added).

alone need not be an act of negligence—such a requirement would render the doctrine superfluous, as plaintiffs would already have a cause of action for each individual act.

In *Ewing v. Beck*, the first Delaware Supreme Court decision to officially recognize the continuous negligent medical treatment doctrine, the Supreme Court acknowledged that plaintiffs injured by a continuum of negligent medical care have "but *one* cause of action."[39] The continuous negligent medical treatment doctrine acknowledges a cognizable claim where the sum total of multiple acts, some of which may not be negligent in and of themselves, constitutes negligent treatment. An act that is part of the negligent treatment may be deemed the "last act" for purposes of the second prong of the statute of limitations analysis. That is not to say that any act by the medical professional in relation to the condition for which the plaintiff received negligent treatment can constitute the "last act."[40] The act must be one that, *together with other acts taken during the course of treatment*, forms the negligent whole.

---

[39] *Id.* (emphasis added).

[40] *See Benge*, 553 A.2d at 1183 ("The difference between the [continuing treatment doctrine and the continuous negligent medical treatment doctrine] . . . is that under the doctrine of continuous negligent medical treatment, the focus is limited to the last act in the negligent continuum, not the last act of any treatment."); *Ewing*, 520 A.2d at 663 n.11 ("The cause of action recognized today . . . assumes a continuous course of improper examination or treatment which is substantially uninterrupted. . . . Our focus is limited to the last act in the negligent continuum[,] *not* the last act of any treatment.").

Here, the date of the last act in the continuum of negligent treatment was March 23, 2016, the date on which Dr. Ramani attempted but could not complete Mr. King's repeat colonoscopy due to the malignant growth on Mr. King's colon. Mr. King's March 23, 2016 visit was directed by Dr. Ramani's April 4, 2011 recommendation to return for a repeat colonoscopy within 3 to 5 years. On March 23, 2016, Dr. Ramani attempted but failed to complete the repeat colonoscopy because a malignant growth on Mr. King's colon had developed between the two visits. These acts—the April 4 recommendation and the March 23 failed colonoscopy—are so inexorably intertwined so as to constitute one continuous wrong. In other words, while Dr. Ramani breached the standard of care by making a wrongful recommendation on April 4, it was the recommendation *and* the resulting too-late treatment that comprised the continuous negligent medical treatment. Accordingly, the two-year statute of limitations began to run on March 23, 2016, the date of the "last act" in the negligent medical continuum.

## B.     Plaintiffs' claims are not time-barred

By letter dated January 26, 2017, Plaintiffs informed Defendants of Plaintiffs' intention to investigate potential claims of medical negligence. Section 6856 provides that a notice of intent to investigate may toll the limitations period by up to 90 days, which "shall run from the last day of the applicable statute of limitations."[41]

---

[41] 18 *Del. C.* § 6856(4).

Accordingly, the two-year limitations period was tolled by up to 90 days from March 26, 2018. Plaintiffs filed the Complaint within the tolled limitations period, on April 16, 2018. Accordingly, Plaintiff's claims are not time-barred and summary judgment must be denied.

## CONCLUSION

This medical negligence case does not involve a single act of negligence. Rather, it involves a continuum of negligent medical treatment related to a single condition occasioned by negligence. The date of the breach of the standard of care, April 4, 2011, and the date of Mr. King's injury, March 23, 2016, are two different dates. Nevertheless, the April 4 recommendation and the March 23 failed colonoscopy are so inexorably intertwined so as to constitute one continuous wrong. Accordingly, this lawsuit was timely filed on April 16, 2018 within the tolled statute of limitations period.

Denial of summary judgment is not an extraordinary ruling. Indeed, summary judgment is frequently denied. Nevertheless, this Court appreciates that denial of summary judgment for the reasons set forth herein may merit appellate review before a final judgment.

15

**NOW, THEREFORE,** this 28th day of April 2020, Defendants' Motion for Summary Judgment is hereby **DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**