IN THE SUPREME COURT OF THE STATE OF DELAWARE

JONATHAN SAUNDERS, §
§ No. 470, 2024
  Plaintiff Below, §
  Appellant, §
§ Court Below:  Superior Court
  v. § of the State of Delaware
§
LIGHTWAVE LOGIC, INC. and § C.A. No.  N23C-05-120
BROADRIDGE FINANCIAL §
SOLUTIONS, INC., §
§
  Defendants Below, §
  Appellees. §

Submitted: April 9, 2025
Decided:    June 30, 2025

Before **SEITZ**, Chief Justice; **VALIHURA, TRAYNOR**, **LEGROW**, and
**GRIFFITHS**, Justices, constituting the Court *en Banc*.

## **ORDER**

(1)    After several years of dormancy, an investor's stock escheated to the State of Delaware by operation of law.  Although the escheatment occurred in 2017, the investor did not discover the injury until 2021, after the three-year statute of limitations for the investor's negligence and conversion claims had expired.  The sole question on appeal is whether the limitations period was tolled because the investor's injury was inherently unknowable, even though he did not keep an up-to-date address with the company and made no effort to contact the company after not receiving mail from it for several years.  We hold that the investor cannot carry his

burden under the inherently unknowable injury tolling doctrine and his claims were therefore untimely.

## FACTUAL AND PROCEDURAL BACKGROUND

(2)    In 2013, Jonathan Saunders, M.D. purchased 55,000 shares of stock in Lightwave Logic, Inc. ("Lightwave") for $1.00 per share.  Lightwave is a Nevada corporation and its transfer agent is Broadridge Financial Solutions, Inc. ("Broadbridge").  Dr. Saunders was unable to find a broker to hold the stock because it was an over-the-counter ("OTC") security, so the shares were registered in Dr. Saunders' name, and the stock certificate was mailed to his residence in Wilmington, Delaware (the "Former Residence").  In addition to his Lightwave stock, Dr. Saunders owned three other OTC stocks that were registered in his individual name.

(3)    The following year, Dr. Saunders moved to a new residence in Wilmington (the "New Residence").  His mail was forwarded from the Former Residence for at least a year.  Dr. Saunders did not, however, contact Lightwave to update his mailing address, although he did so with other financial institutions, including his broker.  Dr. Saunders knew the couple who purchased the Former Residence and, after the mail-forwarding service ended, the new owners continued to forward him mail that was addressed to him.

(4)    Dr. Saunders monitored his Lightwave investment by periodically checking the stock price and searching online for public announcements issued by

2

the company.  He also occasionally discussed the company with various Lightwave officers and directors whom he knew.  But he does not recall receiving any mail from Lightwave at either the Former Residence or the New Residence, including any periodic reports or financial statements.  Dr. Saunders never voted in a Lightwave election.

(5)    Delaware law in effect at the time provided that securities would escheat to the State after a three-year period of dormancy.[1]  On October 11, 2016, Broadridge notified Lightwave of shares that were eligible for escheatment due to a lack of contact from stockholders.  Dr. Saunders' shares were among those listed because he had not communicated with the company in writing or voted his shares since he purchased the stock in July 2013.

(6)    Broadridge's practice was to send a "dormant account" letter to stockholders when their shares became eligible for escheatment.  The letter provided instructions to the stockholder to avoid escheatment.  Dr. Saunders does not recall receiving any such letter.  When Lightwave received no contact from Dr. Saunders, his stock escheated to the State of Delaware on January 26, 2017.

(7)    The Delaware Office of Unclaimed Property's ("OUP") practice at that time was to (i) send outreach letters to owners whose property had escheated to the State, and (ii) publish notice of the escheated property on its unclaimed-property

---

[1] 12 *Del. C.* § 1198(9)(a) (Supp. 2016).  *Cf.* 12 *Del. C.* § 1133(13).

3

database. The database listed the property owner's name, city and state, the holder's name, and whether the property was valued over $50.00. Dr. Saunders does not recall receiving any outreach letter and disputes the assertion that notice was posted on the online database. On June 6, 2017, the State of Delaware sold Dr. Saunders's stock for $69,298.43

(8) Dr. Saunders was not aware that the stock had escheated until July 2021. Earlier that year, Lightwave's trading price increased, and Dr. Saunders learned that the company planned to uplist to the NASDAQ. He then asked a broker to hold the stock. The broker made inquiries and discovered the escheatment. Dr. Saunders contacted the OUP and was advised that the stock had been sold. The OUP mailed Dr. Saunders a check for the liquidation value of the Lightwave stock. Dr. Saunders did not cash the check and maintains that the stock was worth more than $600,000 on the date that the OUP issued the check.[2] After unsuccessfully trying to resolve the issue with Lightwave and the OUP, Dr. Saunders filed a lawsuit on September 30, 2022.[3]

(9) Dr. Saunders brought claims against Lightwave and Broadridge for negligence and conversion, both of which are subject to a three-year statute of

---

[2] *See* Opening Br. at 10 n.8.

[3] Dr. Saunders initially filed his lawsuit in the Court of Chancery. After that court questioned whether it had subject matter jurisdiction over the claims, Dr. Saunders transferred his negligence and conversion claims to the Superior Court.

4

limitations in Delaware. Lightwave and Broadridge moved to dismiss both claims as untimely, but the Superior Court denied that motion, holding that it was reasonably conceivable that Dr. Saunders would be able to demonstrate that the limitations period for his claims was tolled because the escheatment of his stock was an inherently unknowable injury. The parties conducted limited discovery related to tolling,[4] after which Broadridge and Lightwave moved for summary judgment on the basis that the statute of limitations barred Dr. Saunders' claims.

(10) The Superior Court granted summary judgment and dismissed the claims as time barred based on two independent legal rulings: (1) the escheatment of shares to the State and their liquidation was not the type of injury that could be deemed "inherently unknowable" as a matter of law; and (2) the record demonstrated that Dr. Saunders could not prove the elements of the inherently unknowable injury exception, even if it was legally available. Dr. Saunders appealed both rulings. Because we conclude that the undisputed facts show that Dr. Saunders cannot establish the necessary elements of the inherently unknowable injury exception, we

---

[4] During discovery, Dr. Saunders moved to compel the production of documents created before January 1, 2016. The Superior Court denied the motion based on Lightwave's representation that it did not intend to rely on any such documents. Dr. Saunders argues on appeal that the Superior Court's summary judgment opinion improperly relied on Lightwave's contention that it sent proxy materials and annual meeting notices to Dr. Saunders before 2016. Because our resolution of this appeal does not depend on whether any Lightwave materials were mailed to Dr. Saunders, we need not address this claim of error.

5

affirm on that basis and do not reach the broader question of whether the exception can ever apply to claims regarding escheated property.

## ANALYSIS

(11) This Court reviews the Superior Court's grant of summary judgment *de novo*.[5] We similarly review *de novo* a trial court's conclusion that a claim is barred by the statute of limitations.[6]

(12) Statutes of limitation reflect a legislative judgment and are strictly enforced by our courts subject to narrow exceptions.[7] The General Assembly establishes what it believes is a reasonable time period in which a plaintiff must bring a claim, striking a balance between "a plaintiff's right to seek a remedy" and "a defendant's right to avoid defending stale claims."[8] Statutes of limitation promote the timely litigation and resolution of claims by requiring a party to diligently pursue

---

[5] *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A.3d 628, 632 (Del. 2013).

[6] *Lehman Bros. Hldgs, Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021).

[7] *See Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1259 (Del. 2011); *Meekins v. Barnes*, 745 A.2d 893, 897–98 (Del. 2000); *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 835 (Del. 1992); *Ewing v. Beck*, 520 A.2d 653, 658–60 (Del. 1987).

[8] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020).

their legal rights or risk losing them.[9] Nevertheless, the application of the limitations period to bar a claim may at times create a hardship or impose a harsh result.[10]

(13) The parties agree that Delaware law imposes a three-year statute of limitations on Dr. Saunders' claims.[11] In Delaware, a claim accrues at the time of the allegedly wrongful act, even if the plaintiff is ignorant of the cause of action.[12] Where, as here, a plaintiff alleges a claim arising in tort, the wrongful act occurs at the time of injury.[13] The parties agree that Dr. Saunders' injury occurred on January 26, 2017, when his stock escheated to the State, and his negligence and conversion claims therefore accrued on that date. Dr. Saunders filed his complaint on September 30, 2022, more than five years after the claims accrued. Accordingly, for his claims

---

[9] *ISN Software Corp.*, 226 A.3d at 731 nn.15 & 17; *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004); *see* 51 Am. Jur. 2d *Limitation of Actions* § 9 (2025) ("Statutes of limitation . . . serve as instruments of court management, promote judicial economy, and are commonly justified on judicial efficiency.") (internal citations omitted); *see also* Melissa DiVincenzo, *Repose vs. Freedom – Delaware's Prohibition on Extending the Statute of Limitations by Contract: What Practitioners Should Know*, 12 Del. L. Rev. 29, 30 (2010); 51 Am Jur. 2d *Limitation of Actions* § 5 ("Statutes of limitation are intended to promote the efficient litigation of claims and further the policy that one must diligently pursue one's legal rights at the risk of losing them if they are not timely asserted.") (internal citations omitted).

[10] *ISN Software Corp.*, 226 A.3d at 731–32; *Marvel v. Clay*, 1995 WL 465322, at *4 (Del. Super. June 15, 1995), *aff'd*, 676 A.2d 905 (Del. 1996).

[11] *See* 10 *Del. C.* § 8106.

[12] *SmithKline Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000).

[13] *Lehman Bros. Hldgs, Inc.*, 268 A.3d at 185–86; *ISN Software Corp.*, 226 A.3d at 732–33 ("For tort claims . . . the wrongful act occurs at the time of injury. Stated another way, '[a] cause of action in tort accrues at the moment when an injury, although slight, is sustained in consequence of the wrongful act of another.'") (quoting 51 Am. Jur. 2d *Limitation of Actions* § 135) (interpreting 10 *Del. C.* § 8106).

to be timely, the "running" of the limitations period must have been tolled by a recognized tolling doctrine.[14]

(14) After a cause of action accrues, the statute of limitations can be "tolled" under certain narrow circumstances. One such circumstance, which Dr. Saunders argues applies here, arises when an injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[15] When this "inherently unknowable injury" doctrine applies, a limitations period will not begin to run until "the discovery of facts 'constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."[16]

(15) In its summary judgment decision, the Superior Court held that the inherently unknowable injury exception was "unavailable" in a cause of action alleging negligence and conversion relating to the escheatment of stock. According to Dr. Saunders, that conclusion lacks footing in Delaware law, which does not categorically exclude any particular type of claim from the tolling doctrine's application. We need not reach that issue, however, because we agree with the Superior Court's alternative holding that Dr. Saunders could not meet his burden to

---

[14] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).

[15] *Wal-Mart*, 860 A.2d at 319 (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842–43 (Del. 2004)); *Layton v. Allen*, 246 A.2d 794 (Del. 1968).

[16] *Wal-Mart*, 860 A.2d at 319 (quoting *Coleman*, 854 A.2d at 842) (emphasis in original)).

8

prove that his alleged injury was inherently unknowable or that he was blamelessly ignorant of it.[17]

(16) First, Dr. Saunders did not establish that his injury was practically impossible to discover.[18] Accepting Dr. Saunders' position that he did not receive any mailings from Lightwave, Broadridge, or the OUP, it remains indisputable that an inquiry by or on behalf of Dr. Saunders at any time within the limitations period would have revealed the escheatment of his stock. Indeed, the record shows that the relevant facts were promptly revealed in 2021 when a broker made inquiries on Dr. Saunders' behalf.[19] Nothing about the injury was inherently unknowable before that time; Dr. Saunders' discovery of his injury was prompted by his renewed interest in the stock when Lightwave appeared poised to uplist, not by anything that made the injury practically impossible to discover before that date.[20]

---

[17] *Saunders v. Lightwave Logic, Inc.*, 2024 WL 4512227, at \*10 (Del. Super. Oct. 17, 2024). *See In re Dean Witter P'ship Litig.*, 1998 WL 442456, at \*6 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) ("As the party asserting that tolling applies, plaintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled.").

[18] *See, e.g.*, *Brown v. Court Square Capital Mgmt., L.P.*, 2022 WL 841138, at \*3 ("The inherently-unknowable-injury doctrine tolls the limitations period only where it would be 'practically impossible for a plaintiff to discover the existence of a cause of action.'") (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007)).

[19] *See* App. to Opening Br. at A1246 (letter from Dr. Saunder's wife to Lightwave dated November 5, 2021), A1249 (email from Lightwave dated November 11, 2021, explaining that the shares had been escheated), A0964 (Saunders' Dep. at 31:11–33:17).

[20] *See id.* at A0964 (Saunders' Dep. at 31:11–33:17).

9

(17) Second, Dr. Saunders could not show that he was blamelessly ignorant of the allegedly wrongful act. He concedes that he did not make any effort to maintain a current address with Lightwave. Dr. Saunders moved in 2014. He does not recall receiving any mailing from the company at either residence, but several years of silence by Lightwave did not prompt him to contact the company or update his address with them, even though he did so with other financial institutions. Dr. Saunders cannot argue that he bears no responsibility for his lack of knowledge when he did not take reasonable steps to avoid it.

(18) For the foregoing reasons, we affirm the Superior Court's conclusion that Dr. Saunders' claims are barred by the statute of limitations.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

10