**Fred DUNN and Catherine Dunn, his wife, Plaintiffs Below, Appellants,**

v.

**ST. FRANCIS HOSPITAL, INC., a Delaware Corporation, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 9, 1979.

Decided March 27, 1979.

Douglas B. Catts, of Schmittinger & Rodriguez, Dover, for plaintiffs-appellants.

Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendant-appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

The motion of Defendant St. Francis Hospital, Inc. for summary judgment was granted by the Superior Court on the ground that the action was barred by the applicable statute of limitations. The plaintiff's appeal in this medical malpractice case presents the question of whether the statute of limitations commenced to run when the negligent act or omission was committed or when the harm first manifested itself to the patient. The plaintiff also contends that if the Court finds that the statute begins to run at the time of the negligent act, then the statute is unconstitutional. Both issues were effectively considered by the Court below in a concise opinion by Judge Wright. *Dunn v. Felt,* Del.Super., 379 A.2d 1140 (1977). We affirm.

For present purposes, these facts are accepted by stipulation. On July 13, 1970, Dr. Milan Q. Felt, also a defendant, but uninvolved in this appeal, performed a bilateral radical discoidectomy operation upon the back of the plaintiff, Fred Dunn, at St. Francis Hospital. Although plaintiff's symptoms were on the left side of his back, the doctor entered the back from the right side. In April, 1975, plaintiff began to experience pain in his right leg. In January, 1977, plaintiff discovered that the pain he was experiencing since April, 1975 may have been caused by Dr. Felt's negligence in performing the 1970 operation. On March 10, 1977, plaintiff instituted an action against Dr. Felt and St. Francis Hospital.

The applicable statute of limitations is 18 *Del.C.* § 6856, which provides as follows:

"§ 6856. General Limitations.

"No action for the recovery of damages upon a claim against a health care provider for personal injury, including personal injury which results in death, arising out of malpractice shall be brought *after the expiration of 2 years from the date upon*

*which such injury occurred;* provided, however, that:

"(1) Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of *3 years from the date upon which such injury occurred, and not thereafter;* . . ." (emphasis supplied)

This statute applies to all actions brought after April 26, 1976, 18 *Del.C.* § 6857, and is thus applicable here.

 It seems to us that the first question can be answered on the face of the statute itself. The statute grants an additional year before its bar is effective when the occurrence of the injury "was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person."

This limited extension of the period, in our judgment, is intended to give consideration to the problem of an injury which is not physically ascertainable. Such extension further appears directly intended to limit the open-ended aspect of the prior law which provided in the case of an "inherently unknowable" injury that the applicable period began to run when the injured person became aware of his injury. *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968). It simply appears on the face of the statute

that § 6856(1) is an attempt both to codify the "inherently unknowable" injury rule of the *Layton* case and to limit it to three years. See *Pearson v. Boines,* Del.Super., 367 A.2d 653 (1976), aff'd, Del.Supr., 386 A.2d 651 (1978); see also *Handy v. Marvil,* Del.Super., 385 A.2d 1129 (1978).

If the above conclusion about the legislative intent is not clear from the face of the statute, an examination of the legislative history confirms the conclusion.

The introductory paragraphs of the malpractice bill, Chapter 68 of Title 18, of which § 6856 was a part, indicate that the main reason for passage of the legislation was the concern over the rising cost of malpractice liability insurance. 60 *Del. Laws* C. 373.* The report to the Governor of the Delaware Medical Malpractice Commission which drafted the statute clearly indicates that the phrase "injury occurred" means the time at which the wrongful act or omission occurred. That report, referring to § 6856, reads in part:

"[t]he overall effect will be to eliminate the uncertainty created by the present open-ended period of limitations . .

"The statute proposed is a two year statute permitting a third year in which to bring the action where the injury was unknown and could not in the exercise of reasonable diligence have been discovered." *Report of the Delaware Medical*

---

* "WHEREAS, the number of suits and claims for damages both in Delaware and throughout the Nation as well as the necessary costs of defense and the size of judgments and settlements thereon, arising from professional patient care have increased tremendously in the past several years; and

"WHEREAS there has been a tremendous increase in the cost of liability insurance coverage for health care providers in Delaware, and in some instances the withdrawal of liability insurance companies from the business of insuring health care providers in Delaware, endangering the ability of the citizens of Delaware to continue to receive quality health care as well as adequate and just compensation for negligent injuries; and

"WHEREAS, the General Assembly determines it is necessary to make certain major modifications to its current legal system as it relates to

health care malpractice claims if the citizens of Delaware are to continue to receive a high quality of health care while still assuring that any person who has sustained bodily injury or death as a result of a tort or breach of contract on the part of a health care provider resulting from professional services rendered, or which should have been rendered, can obtain a prompt determination of adjudication of that claim and receive fair and reasonable compensation from financially responsible health care providers who are able to insure their liability, under a strictly construed fault principal as now, at a cost which is not prohibitive and does not lead to the problems and practices described above, while still maintaining Delaware's overall legal system as to health care malpractice claims except as modified by this legislation."

*Malpractice Commission,* pp. 3–4, Feb. 26, 1976.

Thus, through examination of the legislative history, there is no doubt that the phrase "injury occurred" refers to the date when the wrongful act or omission occurred.

The plaintiff seeks to avoid the clear thrust of the statute by a skillful resort to the general theory of a negligence action in relation to the statutory phrase "date upon which such injury occurred." In essence, the plaintiff says to establish a cause of action for negligence three elements must be shown: negligence, proximate cause, and damage. Prosser, *Law of Torts,* Sec. 30, p. 144. "It follows that the statute of limitations does not begin to run against a negligent action until some damage has occurred." *Id.* The plaintiff argues that in this case there was no damage until April 1975 when pain was experienced and until that date the "injury" had not "occurred."

The answer, however, must be that the statute was a response to a particular issue in a particular context and that to construe it broadly without the bounds of that context, as plaintiff desires, would emasculate its very purpose. Furthermore, if the General Assembly intended there to be a line of demarcation based on the no pain-no injury rationale, it would have said so in some precise manner. We cannot frustrate the clear legislative intent which was carefully respected by the interpretation of the Court below. The statutory context and history makes it unnecessary for us to explore when damage occurred in the context the plaintiff argues, but it seems to us that it is not necessarily the same time as the first manifestation of pain in the leg given the initial and allegedly wrongful entry into the body from the right side of the back.

The plaintiff contends that if the phrase "injury occurred" refers to the date which the wrongful act or omission occurred, then 18 *Del.C.* § 6856 is unconstitutional. Article I, Section 9 of the Constitution of 1897 of the State of Delaware provides in pertinent part as follows:

"All courts shall be open, and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by due course of law, and justice administered according to the very right of the cause and the law of the land . . ."

The effect of Section 6856 is not unconstitutional for the reasons indicated by Judge Wright in the opinion below. In addition to the authorities cited in that case, essentially the same question was before an Arizona court in the case of *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26 (1976). The Arizona Constitution contained a provision similar to Article I, Section 9 of the Delaware Constitution. The Court found that the legislature had a right to set a reasonable time for an action to be brought even though the plaintiff would not discover the injury until after the statute of limitations had run. The Court with regard to the Arizona constitutional provisions said: "We are referred to no case which holds that subjective awareness of the claim is something which necessarily flows from the constitutional language and we decline to attribute this meaning to it." 546 P.2d at 31.

In the case, of *Owen v. Wilson,* 260 Ark. Supr. 21, 537 S.W.2d 543 (1976), noted by the Court below, the Arkansas Supreme Court determined that a malpractice statute of limitations that ran from the time of the wrongful act was not violative of Art. II, Section 13 of the Arkansas Constitution which read in relevant part as follows:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character."

The Court found that the test for constitutionality of the statute was whether the time period before the bar became effective was so short as to amount to a denial of the right itself. In determining that the statute was constitutional, the Court said:

"We are in no position to say that the legislative determination that two years . . . is such an unreasonable short period of time for those situated like appellants to discover and assert their cause

of action, absent fraudulent concealment to deprive them of due process of law or to deprive them of any remedy."

The reasoning of both of the above cases appears to be representative of the general law and must govern. See *Schwartz v. Heyden Newport Chemical Corp.*, Ct. of App., 12 N.Y.2d 212, 239 N.Y.S.2d 896, 188 N.E.2d 142 (1963), amended on other grounds, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253 (1963), cert. denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963) ("[S]ociety is best served by a complete repose after a certain number of years even at the sacrifice of a few unfortunate cases"); *Chase Securities Corp. v. Donaldson*, 325 U.S. 312, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (Statutes of limitations "are by definition arbitrary, and their operation does not discriminate between the just and unjust claim, or the voidable and unavoidable delay").

The Delaware statute is like the Arizona statute, a hybrid statute. In other words, there is one period (two years) applicable for injuries discoverable at the time of the wrongful act and a different period (three years) for "inherently unknowable" injuries. It cannot be said that Delaware's three-year limit, which is shorter than Arizona's six-year limit and longer than Arkansas' two-year limit, is so unreasonable a limit as to be unconstitutional. In setting a time limit for inherently "unknowable injuries" it must be remembered that "[a] finite cut-off is probably necessary at some point in time regardless of the state of the patient's knowledge if the policy considerations underlying the statute of limitations are to be vindicated." See King, *The Law of Medical Malpractice*, 283 (1977). It is the legislature and not the courts which must determine what the finite period is, and they are constrained only in that the time limit must not be unreasonable.

Thus, the three-year time period in Section 6856(1) runs from the time when the wrongful act occurred and not from the time when that act was discovered. Since plaintiff did not bring this action against St. Francis Hospital before July 13, 1973, his action is barred by Section 6856(1).

\* \* \* \* \* \*

Affirmed.