**Horace P. MARTIN and Dayna L. Martin, Plaintiffs,**

v.

**Camilio GOPEZ, M.D., Defendant.**

**Civ. A. No. 86–503–JRR.**

United States District Court, D. Delaware.

Dec. 18, 1987.

C. Waggaman Berl, Jr., Wilmington, Del., for plaintiffs.

Mary Pat Trostle of Biggs & Battaglia, Robert J. Katzenstein of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., for defendant.

OPINION

ROTH, District Judge.

This is an action for medical malpractice, brought by Horace P. Martin and his wife, Dayna, against Camilo Gopez, M.D., a neurosurgeon. Jurisdiction in this Court is based on diversity of citizenship. The complaint was filed on October 28, 1986. Defendant Gopez has filed two motions for summary judgment, based on several grounds, including the statute of limitations. For the reasons stated below, we find that plaintiffs' claims are barred by the two year limitations period of 18 *Del.C.* § 6856. Because we will grant the motion for summary judgment on that ground, we will not consider defendant's other grounds or arguments.

Plaintiff Horace Martin's claim against Dr. Gopez arose from treatment for inju-

ries that Horace Martin suffered in an automobile accident in 1979. Dr. Gopez treated Martin from January to April of 1980 for complaints of headaches and of pain between the shoulders, radiating down into the right arm. Following a three year interval during which he was treated for these problems by Dr. Hewlett, his family doctor, Martin returned to Dr. Gopez in July 1983. Dr. Gopez operated on Martin's cervical spine on November 30, 1983, and again on April 5, 1984. Following the first operation, Martin's pain was worse than it had been before his surgery. Martin was told by Dr. Gopez that he couldn't understand why Martin was getting worse. Martin consulted with two other neurosurgeons, Drs. LeRoy and Huang, who both were of the opinion that Martin needed further surgery. Dr. Gopez operated a second time on April 15, 1984. Again, Martin's condition worsened. Immediately after the second surgery, his pain intensified. A couple of months after the operation, Dr. Gopez told Martin that he did not understand why Martin wasn't better, "that it shouldn't be." (Martin Deposition, p. 66). In August, 1984, Dr. Gopez conveyed to Horace Martin that he (Gopez) was completely puzzled and didn't know where to go from there.

Because of his desperation to get something done to feel better, Martin went back to Dr. LeRoy on September 7, 1984. Dr. LeRoy did a thermogram and told Martin that "something further was wrong." (Martin Deposition, p. 69). Martin apparently had a final visit with Dr. Gopez on October 29, 1984. The complaint in this action was filed on October 28, 1986.

On September 23, 1987, plaintiffs amended their complaint to add the allegation that defendant's care of Horace Martin was "a continuous course of treatment by defendant constituting an interrelated, inseparable continuum of medical treatment up to October 29, 1984" and that the "allegations set forth above, constitute treatment which was inexorably interrelated so as to constitute a single continuing wrong." Plaintiffs now contend that under the authority of *Ewing v. Beck*, 520 A.2d 653 (Del.1987), their action is not barred because the statute of limitations did not begin to run until October 29, 1984, the time of the last act of negligence in a continuum of negligent medical care related to a single condition occasioned by negligence. Because this is a diversity action, Delaware law is controlling. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff properly points to *Ewing* as the authoritative precedent to follow. However, we find that under the rule of the *Ewing* case, plaintiffs' claims are barred.

The Delaware Supreme Court held specifically in *Ewing* that neither the continuing treatment doctrine nor the termination of the patient/doctor relationship doctrine is the law in Delaware. *Id.* at 660. The Court did, however, recognize a cause of action for "continuing negligent medical treatment." *Id.* at 662. The Court next determined that in such an action for continuing negligent medical treatment, the applicable statute of limitations, 18 *Del.C.* § 6856, begins to run "from the date of the last act in the negligent continuum." *Id.* However, the Court qualified this holding:

> A more difficult question is raised by a situation ... where the patient knows or in the exercise of reasonable diligence could have discovered that a cause of action exists for continuing negligent medical treatment and thereafter permits the physician to treat him anyway.

*Id.* at 663. In such a situation, the statute will run from the time that the patient knows or reasonably should know of the negligent treatment.

> [I]f a plaintiff has a cause of action for continuous negligent medical treatment and that fact becomes known within two years of an act in the alleged negligent continuum, the statute of limitations begins to run for two years from the last act in the negligent continuum *prior* to the point in time when the plaintiff has actual knowledge of the negligent course of treatment or in the exercise of reasonable diligence could have discovered the negligent course of treatment.

*Id.*

The *Ewing* Court then went on to consider the question of when a plaintiff "in the exercise of reasonable diligence" could

have discovered the negligent course of treatment. The Court adopted "an objective test, *i.e.*, the reasonably prudent person." *Id.* at 664. However, that objective test was further defined to include a presumption:

> [W]e also hold that there shall be a presumption that a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on [the] date of the consultation with the independent health care provider.

*Id.* (Footnote omitted).

■ Applying Delaware law to the present case, we note that Horace Martin consulted with an independent health care provider, Dr. LeRoy, on September 7, 1984. Under the *Ewing* rule, therefore, the statute of limitations would begin to run for two years from the last act in the negligent continuum *prior* to the consultation with Dr. LeRoy, *i.e.*, from a time no later than Martin's August, 1984 visit to Dr. Gopez.

Because in this case the *Ewing* presumption arises that plaintiff with reasonable diligence could have discovered the negligent course of treatment, we will not take the time to examine whether the other prerequisites for application of the *Ewing* rule are present, *i.e.*, that there was a continuous course of negligent medical treatment during a finite period and that the treatment was inexorably related so as to constitute one continuing wrong. We note also, in arriving at our conclusion that this action is barred by 18 *Del.C.* § 6856, that plaintiff has produced documents which reveal that not only did he consult with an independent health care provider in September 1984, but he also consulted with an attorney, Jeremy Abelson, regarding the disability which followed his first operation. (Martin Deposition, p. 77). Both Dr. Gopez and Dr. Hewlett corresponded with Mr. Abelson in August and September, 1984 concerning Horace Martin's condition, including his failure to improve following the two operations. If the LeRoy consultation invoked the *Ewing* presumption that the cause of action would have been discoverable at that time with reasonable diligence, the contemporaneous consultation with an attorney renders that presumption ineluctable.

■ The above analysis has been done in the context of a "continuing course of negligent medical treatment," as plaintiffs allege in the amendment to the complaint. We would not, however, come to any different conclusion if Dr. Gopez's treatment of Horace Martin were to be viewed as segmented episodes or acts of negligence. For each such episode, the limitations period would begin to run under 18 *Del.C.* § 6856 from the time of the wrongful act, or, if the injury, caused by that wrongful act, were inherently unknowable and could not be discovered by the exercise of due diligence within two years, then under § 6856(1) a third year would be added in which suit could be brought. *Reyes v. Kent General Hospital,* 487 A.2d 1142 (Del.1984); *Dunn v. St. Francis Hospital, Inc.,* 401 A.2d 77 (Del.1979).

Plaintiff's injuries here were not inherently unknowable; he was aware after both operations that his condition had not improved, but, in fact, had deteriorated; he consulted with another neurosurgeon about his condition. Therefore, the two-year limitations period is applicable. *See Collins v. Wilmington Medical Center, Inc.,* 319 A.2d 107 (Del.1974). The only episode which occurred within two years of the filing of the complaint was plaintiff's final visit to Dr. Gopez on October 29, 1984. No claim has been made of any specific act of malpractice on that last visit.

For the reasons stated above, therefore, plaintiff Horace Martin's claim is barred by 18 *Del.C.* § 6856. Since his claim is barred, Dayna Martin's claim for loss of consortium also must fall. *Folk v. York–Shipley, Inc.,* 239 A.2d 236 (Del.1968). Defendant's motion for summary judgment as to both plaintiffs is granted. An appropriate order will follow.