# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MONICA KING ANDERSON,
Individually and as Personal
Representative of the ESTATE OF
WILLIAM KING, STEPHANIE
KING, HEATHER GUERKE, and
AMBER WITHROW,

    Plaintiffs,

    v.

GI ASSOCIATES OF DELAWARE,
P.A., ADVANCED ENDOSCOPY
CENTER, LLC and NATWARLAL
RAMANI, M.D.,

    Defendants.

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

C.A. No. N18C-04-158 VLM

## MEMORANDUM OPINION

Submitted: May 9, 2022
Date Decided: August 24, 2022

## ON REMAND AND
*Upon Consideration of Defendants GI Associates of Delaware, P.A., Advanced Endoscopy Center, LLC and Natwarlal Ramani, M.D.'s Motion for Summary Judgment,*
**DENIED.**

Timothy E. Lengkeek, Esq. of Young Conaway Stargatt & Taylor, Wilmington, Delaware. *Attorney for Plaintiffs*.

Lorenza A. Wolhar, Esq. and Bradley J. Goewert, Esq. of Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware. *Attorneys for Defendants*.

**MEDINILLA, J.**

# I. INTRODUCTION

This is a unique case. In 2011, William King was directed by his doctor to return for a colonoscopy in three to five years. Mr. King complied and returned as instructed. Due to malignant growths from advanced colon cancer, the follow-up colonoscopy could not be performed by his doctor. Mr. King died from complications of cancer within four months on August 2, 2016. Collectively referred to as Plaintiffs, his estate, wife, and daughters[1] filed medical negligence and wrongful death claims in April of 2018 against Defendants GI Associates of Delaware, P.A., Advanced Endoscopy Center, LLC and Natwarlal Ramani, M.D. (collectively "Defendants").

The litigation to date involves the sole issue of whether the statute of limitations under 18 *Del. C.* § 6856 bars Plaintiffs' claims as a matter of law. Upon Defendants' Motion for Summary Judgment that seeks to bar these claims, this dispute has been considered by both the Superior Court[2] and the Supreme Court,[3] returning to this Court on remand.[4] Upon consideration of all relevant pleadings,

---

[1] Mr. King is survived by his wife, Monica King Anderson and his three daughters, Stephanie King, Heather Guerke and Amber Withrow.

[2] *See GI Associates v. Anderson*, 2020 WL 2070342 (Del. Super. Apr. 28, 2020), *rev'd and remanded en banc* 247 A.3d 674, 677 (Del. 2021).

[3] *See GI Associates v. Anderson*, 247 A.3d 674 (Del. 2021).

[4] J. Rocanelli issued her ruling on April 28, 2020. This matter was reassigned to this judicial officer upon J. Rocanelli's retirement.

oral arguments, and the record, this Court finds that Plaintiffs' claims are not barred, and Defendants' Motion for Summary Judgment must be **DENIED**.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A. History of William King's Medical Treatment

Defendant Natwarlal Ramani, M.D. ("Dr. Ramani") performed multiple colonoscopies on decedent William King ("Mr. King") who had a high risk for colon cancer.[5]   During seven years of treatment from 2004 to 2011, Dr. Ramani had consistently recommended that Mr. King return for a repeat colonoscopy in no more than three years.[6]

In April of 2011, Mr. King underwent a colonoscopy performed by Dr. Ramani, who found benign tumors in his colon.[7]   During a follow-up appointment on April 26, 2011, instead of recommending no more than three years, Dr. Ramani directed Mr. King to return for another colonoscopy in *three to five years*.[8]  Mr. King complied.  When Mr. King returned on March 23, 2016,[9] Dr. Ramani attempted to

---

[5] *Anderson*, 247 A.3d at 677; *see also* Defendants' Opening Brief in Support of Their Motion for Summary Judgment, D.I. 87, at 3 [hereinafter Defendants' Opening Brief] (noting that Mr. King was previously diagnosed with colon cancer in 2007).

[6] Plaintiffs assert a repeat colonoscopy was recommended in one to two years in both 2004 and 2009, recommended in one year in both 2005 and 2007, and recommended in two to three years in 2006.  *See* Amended Complaint, D.I. 6, ¶¶ 8-18.

[7] *Anderson*, 247 A.3d at 677.

[8] *Id.* at 678.

[9] Although both Courts previously identified March 26, 2016, as the date of the attempted colonoscopy, both parties provide March 23, 2016, as the correct date.  *See* Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, D.I. 90, at 1 [hereinafter Plaintiffs' Answering Brief]; Defendants' Opening Brief, at 3.  Accordingly, the Court will use March 23, 2016, exclusively as the date of the attempted follow-up colonoscopy.

perform the follow-up colonoscopy but could not, due to advanced colon cancer.[10] It appears that the cancer metastasized between April 11 and June 23, 2016.[11] Despite surgical intervention, Mr. King died of complications related to this cancer on August 2, 2016.[12]

## B. Procedural History

Plaintiffs filed their Complaint on April 16, 2018,[13] alleging wrongful death due to medical negligence. Defendants filed an initial Motion for Summary Judgment on January 22, 2020, arguing Plaintiffs were barred under 18 *Del. C.* § 6856 because the date of injury was the same as the date of the alleged negligent act, rendering the filing of the Complaint untimely.[14] Plaintiffs claimed they timely filed under the Continuous Negligent Medical Treatment Doctrine ("CNMT Doctrine").[15] On April 28, 2020, J. Rocanelli agreed with Plaintiffs that the CNMT Doctrine applied and denied summary judgment.[16]

---

[10] *Anderson*, 247 A.3d at 679.
[11] Plaintiffs' Answering Brief, at 8; Plaintiffs' Supplemental Rule 26(B)(4) Expert Witness Disclosures, at 2.
[12] Plaintiffs' Answering Brief, at 2; Defendants' Opening Brief, at 3.
[13] Plaintiffs utilized the 90-day tolling provision under 18 *Del. C.* § 6856(4) and sent a Notice of Intent to Defendants on January 26, 2018, in order to investigate the claims against Defendants.
[14] *Anderson*, 247 A.3d at 677.
[15] *Id.*
[16] *See Anderson*, 2020 WL 2070342, *rev'd and remanded en banc* 247 A.3d 674, 677 (Del. 2021).

On February 15, 2011, on interlocutory appeal, the Supreme Court reversed the ruling that the CNMT Doctrine applied,[17] and remanded for further proceedings.[18] Both sides were given an opportunity to file briefs in accordance with the Supreme Court's decision. Defendants filed this pending Motion for Summary Judgment on February 15, 2022. Plaintiffs filed their response on March 17, 2022. Oral arguments were held on May 9, 2022. This matter is now ripe for decision.

### III.   PARTIES' CONTENTIONS

Defendants maintain that Plaintiffs are barred under 18 *Del. C.* § 6856 because the date of the injury should be determined to be the date that Mr. King's cancer "should have been diagnosed," which would be "on (or before) April 26, 2014."[19] Alternatively, if the date of injury is after April 26, 2014, Defendants contend entitlement to relief as a matter of law because the "alleged breach in the standard of care caused no harm and is, therefore, of no consequence to the outcome."[20]

Plaintiffs argue summary judgment is not appropriate because the date of injury should instead be determined based on Mr. King's occurrence of metastatic cancer. Specifically, that "injury occurred. . . when Mr. King's colon cancer

---

[17] The Supreme Court also rejected the Plaintiff's contention that the Supreme Court should adopt a limited time-of-discovery rule in cancer cases. The Supreme Court also did not address the constitutional arguments raised before J. Rocanelli, indicating they were not ripe unless there is a determination that Plaintiffs are barred by the statute of limitations. *See Anderson*, 247 A.3d at 685.

[18] *See id.* at 685–86.

[19] Defendants' Opening Brief, at 2.

[20] *Id.*

metastasized to his liver sometime after [his] April 7, 2016 [colon surgery],"[21] where following the surgery, a CT scan on April 11, 2016 did not show the presence of metastatic cancer but a CT scan performed on June 23, 2016, did.[22] Thus, Plaintiffs maintain the injury occurred during this timeframe and the filing of the Complaint is timely under § 6856. As to Defendant's alternative argument, Plaintiffs maintain that proximate cause is established through their expert's opinion that Dr. Ramani's failure to perform a colonoscopy in 2014 led to metastasized cancer, resulting in complications and Mr. King's death.[23]

## IV.   STANDARD OF REVIEW

The burden of proof on a motion for summary judgment under Superior Court Civil Rule 56 falls on the moving party to demonstrate that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.[24] If the moving party satisfies its initial burden, the non-moving party must sufficiently establish the existence of one or more genuine issues of material fact.[25] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the

---

[21] Plaintiffs' Answering Brief, at 12.
[22] *Id.* at 8.
[23] *Id.* at 14.
[24] *See* Super. Ct. Civ. R. 56(c).
[25] *See Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3–4 (Del. 1995); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

application of the law to the circumstances."[26] All facts and reasonable inferences must be considered in a light most favorable to the non-moving party.[27]

## V. DISCUSSION

On remand, this Court is instructed to make factual determinations as to when the date of injury occurred and apply § 6856 to that finding. The Supreme Court's directive is narrow and straight forward: find the occurrence of injury to determine if the law bars Plaintiffs' claims. Because the Supreme Court also made other rulings on the interlocutory appeal, its holding must be fully considered for additional guidance.

### A. The Supreme Court's Ruling

When Plaintiffs filed their Complaint, they originally relied, in part, on the CNMT Doctrine to argue that the alleged negligent advice given by the Defendant doctor in April 2011 was part of a continuum of negligent treatment determined wrongful on March 23, 2016, when Mr. King returned for his colonoscopy and Dr. Ramani was unable to perform it. They argued this last *act* should be the date under the statute of limitations. This argument failed.

---

[26] *Ebersole v. Lowengrub*, 180 A.2d 467, 469–70 (Del. 1962).
[27] *See Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975)); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978).

7

Instead, the Supreme Court found that "Plaintiffs' claim collapse[d] into a single act of alleged medical negligence [on April 26, 2011]"[28] and reversed the Superior Court's ruling that the statute of limitations began running on March 23, 2016, under the CNMT Doctrine.

Defendants therefore maintained that the date of injury should mirror the date of this negligent act on April 26, 2011. This argument was also rejected.

The Supreme Court held that due to the "unique facts of this case, however, the trial court has made a factual finding that 'Mr. King's injury did not arise at the time of the alleged breach of the standard of care.'"[29] It determined the finding was supported by the evidence and that the "injury occurred later, sometime after Dr. Ramani gave his allegedly negligent advice. This is an unusual case, therefore where the date of the negligent act and the occurrence of the injury do not coincide."[30] Having established one negligent act, this Court must now make factual determinations as to the occurrence of injury under the Medical Negligence Act.

**B. Relevant Caselaw and the Development of the Medical Negligence Act**

In 1968, Layton *v. Allen*[31] established the discovery rule in the State of Delaware. In *Layton*, the plaintiff underwent a surgical operation to repair an

---

[28] *Anderson*, 247 A.3d at 681.
[29] *Id.* (quoting *Anderson*, 2020 WL 2070342 at *3).
[30] *Id.*
[31] 246 A.2d 794 (Del. 1968).

abdominal hernia.[32]  Seven years later, the plaintiff began having abdominal pain due to a surgical instrument that was left in the plaintiff's abdomen.[33]  At that time, Delaware did not have a specific statute of limitations for medical negligence suits. Rather, the *Layton* Court considered the statute of limitations for personal injury actions[34] and held the date of injury for an "inherently unknowable injury" was the date "the harmful effect first manifests itself and becomes physically ascertainable."[35]

Almost a half century ago, on April 26, 1976, the Medical Negligence Act became effective as 18 *Del. C.* § 6856.[36]  After reviewing the legislative history of § 6856, including the Report of the Delaware Medical Malpractice Commission, the Supreme Court in *Dunn v. St. Francis Hospital, Inc.* determined the Medical Negligence Act intended "to codify the 'inherently unknowable' injury rule" of *Layton*.[37]  In so doing, the Court held that "the phrase 'injury occurred' [in the statute] refers to the [same] date when the wrongful act or omission occurred,"[38] and rejected the *Layton* ruling that the statute of limitations ran from the time the injury

---

[32] *Id.* at 795.

[33] *Id.* at 796.

[34] When *Layton* was decided the relevant statute was 10 *Del. C.* § 8118.  The statute is now found at 10 *Del. C.* § 8107.

[35] *Layton*, 246 A.2d at 798.

[36] *See* 18 *Del. C.* § 6856.

[37] 401 A.2d 77, 79 (Del. 1979).

[38] *Id.* at 80.

was discovered.[39]  As such, today a personal injury claim arising out of medical negligence generally must be brought within two years, or three if the case falls into the *Layton*-like "inherently unknowable injury."[40]

Based on the submitted authority, it appears that in the last three decades the Supreme Court has applied *Dunn* to only two significant medical negligence cases involving misdiagnoses of cancer, namely *Meekins v. Barnes*[41] and *Dambro v. Meyer*.[42]  Both held that the statute of limitations began to run at the time the injury occurred—when the doctor *failed to diagnose* the cancer.[43]  *Meekins* further established that the statute of limitations cannot begin to run based on a theoretical occurrence and instead requires an "affirmative happening or event" to create a cause of action.[44]

In these post-*Layton* decisions, the Courts' interpretations of § 6856 consistently held that the date of injury always mirrored the negligent act.  Until now.  In accordance with the Supreme Court, "[t]he text of § 6856 does not mandate

---

[39] *Id.* at 81.

[40] The statute states in relevant part:
> Solely in the event of personal injury the occurrence of which, during such period of 2 years, was unknown to and could not in the exercise of reasonable diligence have been discovered by the injured person, such action may be brought prior to the expiration of 3 years from the date upon which such injury occurred, and not thereafter[.] *See* 18 *Del. C.* § 6856.

[41] 745 A.2d 893 (Del. 2000).

[42] 974 A.2d 121 (Del. 2009).

[43] *See Dambro*, 974 A.2d at 131; *Meekins*, 745 A.2d at 897.

[44] *Meekins*, 745 A.2d at 898.

that the date of negligence and the occurrence of injury must be deemed to coincide."[45]  So what is an occurrence of injury under § 6856?

## C. Occurrence of Injury under The Medical Negligence Act

As under any statute of limitations consideration, the date matters.  The Medical Negligence Act under § 6856 states in relevant part:

> [n]o action for the recovery of damages upon a claim against a healthcare provider for *personal injury*, including *personal injury which results in death*, arising out of medical negligence shall be brought after the expiration of two years from *the date upon which such injury occurred*….[46]

Although used within the statute, the General Assembly chose not to define "personal injury" or "injury" within the Medical Negligence Act.  Under § 6850, however, "[a]ny legal term or word of art used in this chapter, not otherwise defined, shall have such meaning as is consistent with the common law."[47]  Merriam-Webster defines "injury" as a "hurt, damage, or loss sustained."[48]  Similarly, Black's Law Dictionary defines "personal injury" as ". . . any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury."[49]

In a tort claim as this, "[a] cause of action . . . accrues at the moment when an injury, although slight, is sustained in consequence of the wrongful act of another. .

---

[45] *Anderson*, 247 A.3d at 685.

[46] 18 *Del. C.* § 6856 (emphasis added).

[47] 18 *Del. C.* § 6850.

[48] *Injury*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/injury (last visited Aug. 22, 2022).

[49] *Personal Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019).

. . ."[50]  So when did Mr. King sustain harm to his person as a result of the alleged

wrongful conduct of Defendants under the Medical Negligence Act?

### D. Occurrence of Injury in This Case

This Supreme Court already determined there was a single negligent *act* on

one day in 2011 attributable to the Defendant doctor.  In heeding the doctor's

instructions to return in five years, injury occurred in 2016.  Which injury?  Perhaps

at first blush, the one that caused his death.  But this record suggests that Mr. King

experienced various injuries before his death from the alleged medical negligence.[51]

Yet, § 6856 seeks "*the date* upon which such injury occurred. . . ."[52]  The

law's request for a finite determination presumes medical accuracy exists in support.

Perhaps in certain medical negligence actions, law and medicine do synchronize to

provide "the date."  But here, aside from evidence of other injuries, several dates

have already been presented by the parties.  The first two dates (April 26, 2011 and

March 23, 2016) were rejected as an occurrence of injury and as a negligent act,

respectively.  Now, the parties submit two new dates for consideration (i.e., upon a

---

[50] *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 834 (Del. 1992).

[51] Though not argued as dates of injury, the factual record supports findings of other significant dates of injury to include when malignant tumors were discovered that prevented the follow-up colonoscopy on March 23, 2016, the diagnosis of carcinomatosis on July 24, 2016, and sepsis, acute kidney and respiratory failure on August 2, 2016.  *See* Plaintiffs' Supplemental Rule 26(B)(4) Expert Witness Disclosures, at 2; Plaintiffs' Brief in Opposition, at 1–2.

[52] 18 *Del. C.* § 6856 (emphasis added).

timeframe of the patient's metastasis versus a hypothetical date of when his doctor should have diagnosed the cancer).

Indeed, that four dates have been submitted for review should serve as a signal under Rule 56 that genuine issues of material fact exist here as to the medical significance of these injuries. To the extent this Court is asked to make factual findings to determine a date of injury and apply § 6856, this Court considers only the proposed dates submitted by the parties, although the record reflects multiple potential dates of injury.

### 1. No Evidence That Hypothetical Date Serves as Date of Injury

Without providing any expert opinion in support, Defendants now argue the date of injury is on or before April 26, 2014, when the cancer should have been diagnosed. Defendants' reliance on this date is based on Plaintiffs' expert opinion that *if* the colonoscopy had been performed on or before this date (three years after Dr. Ramani found the benign tumors), then the cancer, *if* diagnosed at that time, would have been more treatable.[53] This argument focuses on the *act* of the doctor instead of the *injury* to the patient.

Although the Supreme Court already distinguished this case from *Dunn*, *Meekins*, and *Dambro*, Defendants maintain "this case is just like [those three

---

[53] *See* Transcript of Deposition of Dr. Steven Moss, dated October 14, 2019, at 72:5-7 [hereinafter Transcript of Dr. Steven Moss] (emphasis added).

cases]" and therefore "[t]he 'time of injury' commenced the running of the statute of limitations on April 26, 2014."[54] They assert this is the only logical outcome because those three cases establish that the date of injury is "the date that the cancer could have been diagnosed but was not."[55] Not so.

First, as the Supreme Court noted on appeal, *Dunn*, *Meekins*, and *Dambro* all found those dates of injury coincided with the negligent conduct.[56] Second, in those three cases the Courts determined the injury occurred on either a date of a negligently performed surgery or misdiagnosis of cancer. Neither are applicable here.

In *Dunn*, the doctor performed a back surgery on the plaintiff, entering on the wrong side of his back.[57] Nearly seven years later, Dunn learned the pain he had been experiencing for the prior years may have been due to the surgeon's negligence.[58] The *Dunn* Court found that the time of injury coincided with the negligently performed surgery and Dunn was barred by the statute of limitations.[59] Nothing in *Dunn* supports Defendants' assertion that the time of injury was April 26, 2014. Not only is *Dunn* inapposite to the present matter, but the Supreme Court has already determined that this result is not supported by the facts of this case.[60]

---

[54] Defendants' Opening Brief, at 12.
[55] *Id.*
[56] *Anderson*, 247 A.3d at 685.
[57] *Dunn*, 401 A.2d at 78.
[58] *Id.*
[59] *Id.* at 80.
[60] *Anderson*, 247 A.3d at 685.

*Meekins* and *Dambro* are similarly unhelpful to Defendants. Both cases involved a doctor's failure to diagnose breast cancer.[61] Here, there is no assertion that Dr. Ramani ever *misdiagnosed* Mr. King's cancer. Dr. Ramani found only benign tumors on April 26, 2011, and nothing in the record suggests this was incorrect. The next appointment occurred on March 23, 2016, when Dr. Ramani diagnosed Mr. King with colon cancer. Again, this diagnosis is not disputed.

Moreover, although distinguishable for other reasons, this Court does find *Meekins* helpful in one regard. There, the Court rejected the plaintiff's assertion that the Court should determine the statute of limitations date based on a theoretical examination that never occurred. The plaintiff argued unsuccessfully that the statute of limitations did not begin to run until six months after her misdiagnosis because the doctor *should have* ordered another mammogram for her at that time.[62] The Court rejected the "commencement of the statute of limitations period . . . on the theoretical six-month period,"[63] and elaborated that "[t]here was no cause of action that actually arose [on this theoretical date] because no affirmative happening or event of medical negligence occurred at that time."[64]

---

[61] *See Dambro*, 974 A.2d 121; *Meekins*, 745 A.2d 893.
[62] *Meekins*, 745 A.2d at 895 (emphasis added).
[63] *Id.* at 898.
[64] *Id.*

15

Defendants' similar argument fails absent proof of injury. No event occurred between April 26, 2011 (when Dr. Ramani told Mr. King to return in three to five years) and March 23, 2016 (when Mr. King returned). Just as the *Meekins* Court rejected the argument based on a theoretical act of negligence, this Court cannot find the existence of the occurrence of an injury in 2014. Absent any evidence of injury in 2014, or that injury would have occurred had the doctor acted and examined Mr. King, it would be speculative to simply create a theoretical date of injury out of thin air. Therefore, even if applicable, neither *Meekins* nor *Dambro* supports Defendants' assertion that there was an occurrence of injury on or before April 26, 2014.

Most importantly, Defendants' reliance that injury occurred on or before April 26, 2014, fails factually. The Court cannot make such a factual finding where the only medical proffer as to this date is that if the cancer had been diagnosed, it would have been treatable. That a 2014 cancer possibly could have been detected—and treated—does not equate to the occurrence of an injury. The most that can be said about the hypothetical April 26, 2014 date (if Mr. King had presented to Dr. Ramani at year three) is that if the cancer had been diagnosed and treated, then Mr. King would be alive today.[65] In this wrongful death case, under § 6856, Mr. King would have had no action because it cannot be said he had suffered "personal injury which

---

[65] *See* Transcript of Dr. Steven Moss, at 72:8-13, 77:21-78:2.

16

results in death, arising out of medical negligence . . . ."[66] For these reasons, the Court finds no support under 18 *Del. C.* § 6856, case law, or this record that would allow it to determine an occurrence of injury existed on or before April 26, 2014.

The Court next considers Plaintiffs' assertion that the date of injury coincides with the occurrence of metastatic cancer.

## 2. *Evidence of Occurrence of Injury Exists upon Metastasis*

Plaintiffs argue summary judgment is improper where the plain meaning of "personal injury" in 18 *Del. C.* § 6856 supports a determination that the date of injury occurred upon the metastasis of Mr. King's cancer which resulted in physical injury[67] and caused his death.[68] Their evidence is as follows: Dr. Moss opined that there was no metastasis in 2014[69] and colon cancer would have been treatable if discovered on colonoscopy at that time.[70] He specified that Mr. King suffered injury where the metastasis occurred between April 11 and June 23, 2016, and a further injury occurred in July 2016 when Mr. King developed carcinomatosis.[71]

---

[66] *See* 18 *Del. C.* § 6856.
[67] Plaintiffs' Answering Brief, at 7. Plaintiffs define "personal injury" as "'a hurt or damage done a man's person . . . .'" *See id.* (quoting *Personal injury*, Black's Law Dictionary (6th ed. 1990)).
[68] *Id.* at 8.
[69] Transcript of Dr. Steven Moss, at 73:6-14, 81:7-14.
[70] *Id.* at 72:5-7.
[71] Plaintiffs' Supplemental Rule 26(B)(4) Expert Witness Disclosures, at 2–3.

Defendants argue that under *Dambro,* metastasis cannot be used as the date of injury.[72] Their reliance on this authority is misplaced. In *Dambro*, it is true that the Supreme Court rejected the plaintiff's argument that injury did not occur until the cancer metastasized.[73] But, in *Dambro*, there was an actual event when the patient presented for a mammogram and the doctor misdiagnosed her cancer. Therefore, the Court merely reiterated the prior holdings of *Dunn* and *Meekins* that the phrase "injury" refers to the date when the wrongful act or omission occurred.[74] And it determined the injury occurred when the plaintiff was misdiagnosed which resulted in a delay in treatment.[75]

Where there is no evidence of misdiagnosis here, and the Supreme Court has already determined that the dates of negligence and injury do not coincide, *Dambro* should not be interpreted to mean that the occurrence of metastasis can *never* be determined to be an occurrence of injury. Rather, *Dambro* is simply distinguishable. It does not preclude this Court from finding that the occurrence of injury is based upon the metastasis of colon cancer.

Under Rule 56, all facts and reasonable inferences must be considered in a light most favorable to Plaintiffs. Defendants presented no evidence to challenge

---

[72] Defendants' Reply Brief in Support of Their Motion for Summary Judgment, D.I. 91, at 5–6.
[73] *Dambro*, 974 A.2d, at 131–32.
[74] *Id.*
[75] *Id.* at 132.

the medical opinion of Plaintiffs' expert. Accordingly, as between the two dates provided by the parties, the Court accepts Plaintiffs' argument that Mr. King suffered an occurrence of injury of metastatic disease between April 11 and June 23, 2016.

Applying the earliest date of the development of this injury, as provided by Plaintiffs, then the occurrence of the injury began on April 11, 2016. Because a timely Notice of Intent was provided under 18 *Del. C.* 6856(4), Plaintiffs timely filed within the tolled limitations period on April 16, 2018. Whether the onset of the April 11, 2016 injury was *the* personal injury that resulted in Mr. King's death, or whether the cause of death resulted from other occurrences of injuries after the diagnosis of cancer on March 23, 2016, Plaintiffs are not precluded from pursuing their claims because even if the Court inquired more into the injurious nature of these dates, for purposes of the statute of limitations under 18 *Del. C.* § 6856, Plaintiffs' claims were timely filed.[76]

### E. Proximate Cause

Lastly, Defendants assert that any harm occurring after the three-year mark of April 26, 2014, cannot be causally linked to Dr. Ramani's alleged negligent conduct.

---

[76] Although Plaintiffs were unsuccessful in convincing the Supreme Court that the March 23, 2016, date was the last act in the continuum of negligent care, Plaintiffs did not argue that this date, albeit not an act, evidenced an injury. While there was no negligence attributable to Dr. Ramani on that date, there is evidence to support a finding of some injury, namely malignant growths on Mr. King's colon that prevented performance of the 2016 follow-up colonoscopy. Thus, even though Plaintiffs abandon this date, had this Court found the date of injury to be March 23, 2016, independent of the CNMT Doctrine, Plaintiffs' claims would have been timely filed.

Defendants argue that if the harm occurred beyond the three-year follow-up period as recommended by Plaintiffs' expert, then "performing a colonoscopy at the 3-year mark made no difference in this case and a causal connection between breach and harm or injury is not established."[77] Defendants have not provided any authority to support their position and the Court is not persuaded.

Delaware courts have established that to prove causation in a negligence action, the plaintiff must show a "causal nexus" between the injury and the defendant's conduct.[78] Under Delaware law, liability cannot be asserted in a medical negligence action "unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care . . . and as to the causation of the alleged personal injury or death[.]"[79] Delaware courts have found that "[a] breach must be the cause or a cause of the injury."[80] Causation is ordinarily an issue of fact to be decided by the trier of fact.[81]

Dr. Moss provided medical opinions as to both the standard of care and the proximate cause of Mr. King's death.[82] He opined that because Dr. Ramani breached the standard of care when he told Mr. King to return in three to five years "the

---

[77] Defendants' Opening Brief, at 14.

[78] *Money v. Manville Corp. Asbestos Disease Compensation Trust Fund*, 596 A.2d 1372, 1376 (Del. 1991).

[79] 18 *Del. C.* § 6853(e).

[80] *Frey v. Goshow-Harris*, 2009 WL 2963789, at *7 (Del. Super. Sept. 16, 2009) (citing 18 *Del. C.* § 6853 (e)).

[81] *Money*, 596 A.2d at 1375.

[82] *See* Plaintiffs' Supplemental Rule 26(B)(4) Expert Witness Disclosures, at 1–3.

colorectal cancer was not appropriately detected"[83] and this breach caused a delay in Mr. King's care.[84] He opined that "the fact that [Mr. King] had colorectal cancer surgery was because a cancer had developed secondary to a breach of care"[85] and that Mr. King would likely be alive if a colonoscopy were performed in 2014.[86] Further, he stated that this delay negatively impacted Mr. King's prognosis[87] and resulted in growth and development of the tumor between 2014 and 2016.[88] Finally, this delay resulted in "metastatic colon cancer and carcinomatosis [that are] both proximate causes of Mr. King's death."[89]

Viewed in the light most favorable to Plaintiffs, a genuine issue of material fact exits as to the "causal nexus" between Dr. Ramani's alleged negligence and Mr. King's death. Dr. Moss has opined that the harm would not have occurred but for Dr. Ramani's alleged negligent conduct. As causation is generally a question to be decided by the finder of fact, the Court finds Defendants' argument, without more, is premature.

---

[83] Transcript of Dr. Steven Moss, at 59:23-60:1.
[84] *Id.* at 74:11-24.
[85] *Id.* at 59:19-21.
[86] *See id.* at 72:8-13, 77:21-78:2.
[87] *Id.* at 74:11-24.
[88] *Id.* at 82:19-23.
[89] Plaintiffs' Supplemental Rule 26(B)(4) Expert Witness Disclosures, at 3.

21

## CONCLUSION

For the reasons stated, Defendants have failed to establish they are entitled to summary judgment under Rule 56 as a matter of law.  Under 18 *Del. C.* § 6856, Plaintiffs' claims remain timely filed.  Plaintiffs establish the existence of genuine issues of material fact as to whether the subsequently discovered fatal injuries were causally related to the negligent act.  Therefore, Defendants are not entitled to judgment as a matter of law and Defendants' Motion for Summary Judgment must be **DENIED.**

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

22